CARBON COUNTY, a Political Subdivision of the State of Montana, Plaintiff, v. ALBERT G. SCHWEND et al., Defendants and Respondents, EUGENE L. TIPPETS et al., Defendants and Appellants.

No. 14100.
May 16, 1979.
As Amended May 30, 1979.
594 P.2d 1121.

Peterson & Hunt, Billings, for appellants.

Hibbs, Sweeney & Colberg, Billings, for plaintiff.

Sandall & Cavan, Billings, for respondents.

## OPINION AND ORDER

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This decision arises on the motion for dismissal of the appeal and for payment of appeal costs and attorney fees by Albert G. Schwend and Hazel P. Schwend, defendants and respondents ("Schwend"). Appeal was taken from the judgment in the District Court by Eugene L. Tippets, Ruth L. Tippets, his wife, John Dudik and Lois Dudik, and the Corporation of the presiding Bishop of the Church of Jesus Christ of the Latter Day Saints, a Utah Corporation (hereafter "appealing defendants").

Carbon County, a political subdivision of the State of Montana, filed its complaint on May 27, 1976 in the District Court, Thirteenth Judicial District, Carbon County, against more than twenty

defendants, including Schwend and the appealing defendants, to quiet title to a certain roadway known as the Sage Creek Road, claimed to be a public highway in Carbon County, Montana. The complaint also sought an injunction against Schwend over whose land the alleged roadway traversed.

Schwend appeared and filed their answer denying the existence of Sage Creek Road as a public right-of-way and objecting to the other relief demanded in the county's complaint. The appealing de-- fendants did not appear or answer in the District Court. The default of the appealing defendants was duly entered for their failure to appear or otherwise answer the complaint.

The cause then came on for trial on September 22, 1976 before the District Court as between the county and defendants Schwend. On May 2, 1977, the District Court entered its findings of fact, conclusions of law and judgment, in effect finding in favor of Schwend that no dedication to the public use of roadways over their lands had occurred and that the plaintiff county had no prescriptive right for an easement on the claimed road over the Schwend lands.

The county, though requested to do so by the appealing defendants, decided nòt to appeal from the adverse judgment of the District Court. Consequently, on June 28, 1977, the appealing defendants filed a notice of appeal to this Court.

On December 20, 1977, Schwend filed in this Court a motion for dismissal of the appeal on three grounds:

(1) That the appealing defendants had failed to file an undertaking and docket the appeal or transmit the records to this Court;

(2) That appealing defendants had default entered against them in the District Court were precluded from any further participation in the action until default had been set aside;

(3) That appealing defendants did not participate in the action below and the judgment did not adversely affect their interests so that they had no standing to appeal as a party aggrieved under Rule 1, Mont.R.App.Civ.P.

Schwend also moved that this Court ordered the appealing defendants to pay costs and reasonable attorney fees to Schwend for bringing frivolous and unfounded appeal.

Because of apparent factual disputes in connection with the motion for dismissal, on January 11, 1978, this Court ordered the District Court to hold an evidentiary hearing and to make findings of fact and conclusions of law on the following issues:

(a) What assurances, if any, were made by the county to the appealing defendants resulting in the failure of said appealing defendants to appear and defend in the District Court?

(b) To what extent, if any, does the judgment of the District Court adversely affect appealing defendants or any of them?

(c) Do appealing defendants have standing as taxpayers to appeal?

An evidentiary hearing on the questions presented by our order was held before the Hon. Robert J. Boyd, presiding judge in the District Court, on August 3, 1978. Thereafter, the District Court entered and filed with us the following findings of fact and conclusions of law:

"A. ASSURANCE BY THE COUNTY

"1. Carbon County did not give the Appellants any assurances which misled or in any way caused the Appellants' failure to appear, defendant, or otherwise participate in this action as parties in interest.

"2. Prior to the time that the Appellants, Tippets and Dudiks, allowed default to be entered against them, they had consulted with two private attorneys, one being their present attorney, Ken Peterson, and they had further consulted with the attorney for Carbon County, Bill Jensen. The Church had also consulted with Ken Peterson prior to the time that default was entered against them.

"3. The Appellants were fully advised of their rights and interests, both personal and public, in the roadway in question, and of the possible conflicts between their personal interests and those public rights claimed by the County. Based upon the advice of Counsel and their personal knowledge the Appellants were aware, or should have been aware that any final judgment to be rendered on the County's action would affect their right to use the right of way as a public right of way.

"4. The Appellants were advised by the attorney for Carbon County, Bill Jensen, that the sole objective of Carbon County's claim was the establishment of the public nature of the right of way, and that he represented only the County in so far [sic] as this case was concerned. Mr. Jensen advised the Appellants that they should secure independent counsel if they wished to fully assert or protect their interest in the right of way. He further advised the Tippets and Dudiks that if they were in full agreement with the County's position, that they a could allow default to be entered against them and that their failure to appear would be an admission on their part of the merit of the County's position in the law suit. In discussing the entry of default with the Appellants, Mr. Jensen advised the Appellants that their private right would not be affected by the County's action, however, he at no time assured the Appellants that their private rights included a right to proceed with the case on appeal if the County did not appeal an adverse decision.

"5. Prior to their default, during which time the Appellants were encouraging the County to commense [sic] an action to have the right of way declared a public road, the County Commissioners made it clear to the Appellants that they felt any duty they had to the Appellants and to the public in general would be fulfilled if they pursued a legal remedy through the District Court and pursuance through the District Court was the only assurance given by the County Commissioners of Carbon County to the Appellants, and this was the only action requested of the County Commissioners by the Appellants. The Appellants were not given any assurances by the County Commissioners that in the event a judgment was rendered against the County, the County would appeal the judgment to the Supreme Court of Montana. Subsequent to rendition of the judgment against Carbon County, the Commissioners discussed the possibility of appeal with Mr. Jensen and with the Appellants, Tippets and Dudiks. Following these meetings, the County Commissioners were willing to accept the judgment of the District Court and felt that the further expense necessitated by an ap-

peal would not be justified. Accordingly, the Tippets and Dudiks were advised on this decision.

## "B. AFFECTS OF THE JUDGMENT

"1. The judgment of the District Court only concerns the public nature of the right of way in question; it does not adjudicate whether or not the Appellants have any easements for the private use of the right of way in question. If the Appellants held any private easements for the use of the right of way, the judgment entered in this action in no way affects any such rights.

"2. The Judgment affects the Appellants in the same manner as it affects all other members of the public. The Appellants are precluded from use of the right of way as a public right of way. As a practical matter, the Appellants must use an alternative access road to their property.

## "C. STANDING

"1. The Appellants own land within Carbon County upon which they pay property taxes to the County, but they are not residents of Carbon County.

"2. The Appellants are not aggrieved in a direct and substantial way in some manner peculiar to themselves, aside and apart from that of all other taxpayers. As all other taxpayers, they may not use the right of way in question as a public right of way.

"3. The Appellants allowed their defaults to be entered and did not participate in the trial directly as parties to the action.

"4. The facts and issues of this case are not such that the Appellants may properly bring an appeal as taxpayers on behalf of the County.

"From the foregoing findings of fact, the Court makes and enters its:

## "CONCLUSIONS OF LAW

"A. No assurances were made by Carbon County, either through its Commissioners or its Attorney, to the Appellants which mislead or in any way caused the Appellants failure to appear, defend or otherwise participate as parties in the action before the District

Court. The Appellants were fully cognizant of all their rights and interests in the right of way and freely chose to allow their defaults to be taken by the County.

"B. (1) The Judgment of the District Court does not preclude the Appellants from any litigation of their rights and interests to the use of the right of way in question; however, the issue of the public nature of the right of way has been fully adjudicated, and any re-litigation of that issue would be barred by the doctrine of collateral estoppel, unless the judgment of the District Court is set aside.

"(2) The Appellants' private rights and interests in the right of way are unaffected by the judgment entered in this action, they are merely precluded from using the right of way based upon a public right of use.

"C. (1) The Appellants do not have standing as taxpayers to appeal the judgment of the District Court.

"(2) Under Rule 1 of the Montana Rules of Appellate Civil Procedure, only a party aggrieved may appeal from a judgment or order.

"(3) Absent statutory authority, one interested as a taxpayer is not so far aggrieved by a decision adverse to his contentions as to have standing to appeal unless (a) the Appellants have applied to intervene and have been permitted to intervene as Parties Plaintiff at the trial court level, and they have actively participated as parties, and (b) that the suit involves compelling government authority to perform a duty which it is clearly required to perform and which the failure to perform aggrieves the taxpayer in a direct and substantial way, or to prevent the governing authority from doing an act clearly unlawful and affecting the taxpayer in a direct and substantial way.

"(4) There is no statutory authority in Montana granting taxpayers the right to appeal a judgment on behalf of a government entity such as Carbon County.

"(5) The Appellants did not attempt to participate as parties in this action, and, in fact, allowed default to be entered against them.

"(6) Any private rights the Appellants may have had in the right of way have not been directly or substantially affected by the judgment of the District Court. The judgment affects the Appellants only in that the right of way in question may not be used based upon a public right.

"(7) This is not an action to compel government authorities to perform a duty which it is clearly required to perform or to prevent the governing authority from doing an act clearly unlawful.

"(8) The Board of County Commissioners of Carbon County is vested with general supervisory control over all county roads and the acquisition of right of way within Carbon County. Sections 32-2801 and 32-2802 R.C.M.1947.

"(9) To allow the Appellants to maintain this appeal would usurp the Board of County Commissioners' discretionary power to control county roads and expenditures made for such roads.

"FINDINGS OF FACT AND CONCLUSIONS OF LAW DATED this 15th day of Sept. 1978."

We have examined the transcript of the hearing of August 3, 1978, before the District Court, and the briefs and exhibits of the parties filed herein. From our examination of the matter, we determine that the findings of fact adopted by the District Court are supported by substantial evidence in the record. Accordingly, we adopt those findings of fact as our own. See *Arrowhead, Inc. v. Safeway Stores, Inc.* (1978), 179 Mont. 510, 587 P.2d 411, and cases cited therein.

We are in substantial agreement with the conclusions of law reached by the District Court. We hold based upon those conclusions and as well our own examination of our files that the appeal of the appealing defendant must be dismissed. We base our decision upon the grounds that the entry of default against the appealing defendants terminated their right to further participate in this litigation, and further they are not "aggrieved parties" who may appeal under Rule 1, Mont.R.App.Civ.P.

The notice of appeal is the first appearance of any kind by the ap-

pealing defendants in this action. They did not appear in the District Court in any way prior to the entry of their default. No action has been taken by the appealing defendants to have those defaults set aside. In *Central Montana Stockyards v. R. B. Frazer* (1957), 133 Mont. 168, 320 P.2d 981, 988, respondents sought to have the appeal dismissed because notice of the appeal was not served on certain defendants against whom default had been entered in the District Court. We held that such defaulting defendants were not "adverse parties" upon whom notice of appeal had to be served, and this Court said:

" 'The entry of his default terminates his right to participate in the litigation in the absence of fraud; and he may not, until such default is set aside in a proper proceeding, file pleadings, move for a new trial, or demand notice of subsequent proceedings.' (Citing authorities.'

" 'Moreover, one in default must not let the grass grow under his feet. Whenever apprised of the fact or facts, he must move with all reasonable expedition.' (Citing authority.)

" 'A defendant against whom a default is entered is not an adverse party to an appeal from a judgment against other defendants, which cannot affect his interests. (Citing authority.) A default suffered on the part of a defendant is an admission and a reversal would not do away with such default, and as long as it stands any judgment rendered on appeal would not affect the judgment against such refaulting [sic] defendant.' (Citing authority.)"

See also *Sealey v. Majerus* (1967), 149 Mont. 268, 425 P.2d 70.

■ The result is the same under the Montana Rules of Civil Procedure. Under Rule 55(a), Mont.R.Civ.P., the clerk may enter the default of a party who has failed to plead or otherwise defend against the complaint. If the party has not appeared, he is not entitled to notice of the entry of default. Rule 55(b), Mont.R.Civ.P. He has no standing to file further pleadings, absent fraud, unless the default is set aside under Rule 55(b), or Rule 60(c), Mont.R.Civ.P.

■ In the absence of an order of the District Court setting aside the default of the appealing defendants, they had no standing to file

a notice of appeal from an adverse judgment against the plaintiff county.

■ Further, the appealing defendants are not "aggrieved parties" within the contemplation of our appellant rules. Rule 1 of the Montana Rules of Appellant Civil Procedure provides that "[a] party aggrieved may appeal from a judgment or order". In the case of *In Re Stoian's Estate* (1960), 138 Mont. 384, 357 P.2d 41, 46, we held that the converse of Rule 1 was equally true, saying:

" '. . . A party who is not aggrieved by a judgment or order may not appeal from it . . . It is a general rule, of universal application, that to *enable a party to appeal from a judgment or order he must have an interest in the subject matter of the litigation which is injuriously affected by the judgment or order.*' " (Emphasis in original.)

The District Court concluded, and we agree, that the effect of the District Court judgment was to preclude them from using the claimed right-of-way based upon a public right of use; their private rights and interests, if any, in the right-of-way are unaffected by the judgment entered in this action. The appealing defendants are only affected insofar as they are a member of the general public for which the County claimed the right-of-way.

■ Further, the appealing defendants have no standing to appeal as members of the public or taxpayers:

*"Interest as member of public or taxpayer.* As a general rule one interested merely as a member of the general public, or indirectly as a taxpayer, is not so far aggrieved by a decision adverse to his contentions as to have the right of review. The rule is applicable notwithstanding the refusal of the particular state officer to prosecute the appeal on behalf of the people . . ." 4 C.J.S. *Appeal and Error,* § 183, p. 559.

And further:

"A citizen or taxpayer has no right as such to appeal from a judgment in a proceeding to which he is not a party unless he can show he has a direct pecuniary interest in the proceeding, but where the person who desires to appeal is already a party, having been per-

mitted to intervene below, the fact that, as a taxpayer, he will have to share an expense to be borne by taxpayers generally, has been regarded as giving him an appealable interest . . . Generally, however, individual taxpayers cannot enforce a public right nor redress a public injury by an appeal in their own names, where the only wrong they have suffered or damage they have sustained is like, and in common with all other taxpayers. Rather, an appellant must show that he is aggrieved in some manner peculiar to himself, aside and apart from that of other taxpayers or residents." 4 Am.Jur.2d *Appeal and Error*, § 202, p. 708.

Accordingly, the appeal must be dismissed.

Schwend has also asked for attorney fees and costs in connection with this appeal. In the appeal, the appealing defendants recognized that a serious question existed as to their standing to appeal because they did not incur the cost of a transcript of the trial for filing in this Court pending our decision as to whether their appeal would be allowed. The appeal by these parties was entirely unfounded and caused delay, and under Rule 32, Mont.R.App.Civ.P., Schwend should be reimbursed to a reasonable extent for his costs and attorney fees in connection with the appellate proceedings.

Our examination of the record shows that counsel for Schwend was required to frame the motion for dismissal of the appeal, submit briefs supporting the same, prepare for the evidentiary hearing before Judge Boyd, attend such hearing and thereafter submit briefs. The value of the attorney services in this matter is at least the sum of $1,250, which sum we find reasonable to be awarded to Schwend. They are also entitled to their costs on appeal. We note that the District Court did not award costs to any party in connection with the original proceeding in the District Court.

The appeal is therefore dismissed, and Schwend is hereby awarded the sum of $1,250 as and for attorney fees, and the costs of appeal.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON and SHEA, concur.