WILHITE, RESPONDENT, v. BILLINGS & EASTERN MONTANA POWER CO., APPELLANT.

(No. 2,673.)

(Submitted April 5, 1909. Decided April 12, 1909.)

[101 Pac. 168.]

*Nuisances—Power Dams — Comparative Damages—Notice—Injunction—Scope of Order—Evidence—Sufficiency.*

Power Dams—Nuisances—Injunction—Findings—Evidence—Sufficiency.
1.  In a suit for a mandatory injunction to compel defendant power company to lower its dam so as to avoid flooding plaintiff's lands lying above it, and for damages, *held*, that the findings of the court in favor of plaintiff were not based upon a "mathematical impossibility," but were supported by substantial testimony and, therefore, ought not to be disturbed on appeal.

Same—Offer of Proof—Exclusion—Harmless Error.
2.  Alleged error in excluding defendant company's offered proof that the plaintiff's lands had not netted to him in any one year the sum of $801 was harmless, where he had not claimed any damages on account of impairment of the rental value of his premises, and where the finding of the jury that such value had been decreased by the construction and maintenance of the dam, if pertinent, was probably only material to the question whether the injunction

should issue, and where the damages which were awarded ($200) could all be attributed to specific losses testified to by plaintiff.

Same—Injunction—Notice Before Suit.

3.   Defendant power company was chargeable with knowledge of whatever conditions resulted from the construction and maintenance of its dam, and could, therefore, not complain of the failure of plaintiff to give it notice that he had been injured by the overflowing waters and submit an itemized statement of his damages, before commencing suit.

Same—Injunction—Comparative Damages—Evidence.

4.   The record not disclosing any evidence that defendant company was a public service corporation or that it was actually operating any part of its plant, but showing that the dam was in course of construction for over twenty years, and that numerous mistakes had been made and difficulties encountered during its erection, defendant's offer to prove that it cost $120,000 to build was properly excluded, since, under these circumstances, the magnitude of defendant's interest was not apparent, so as to make applicable the rule that injunction will not issue in view of the great damage that would result to defendant and others dependent upon its operations, and the comparatively small injury caused to plaintiff by the maintenance of the dam.

Same—Not Nuisance *Per Se.*

5.   The finding of the court that the dam in question was a nuisance *per se,* disapproved.

Same—Injunction—Scope of Order.

6.   Where the evidence did not show that it was necessary to rebuild, repair or remove defendant power company's dam in order to prevent the flooding of plaintiff's lands, an *order* of the court to that effect was too broad.   All plaintiff was entitled to was a decree that defendant abate the nuisance and refrain from causing him injury in the future, and that, to attain this result, it employ the necessary and requisite means.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ACTION by F. Wilhite against the Billings & Eastern Montana Power Company. From a decree for plaintiff and an order denying defendant a new trial, the company appeals. Remanded, with directions to modify.

*Messrs. Maury & Templeman,* and *Mr. W. M. Johnston,* for Appellant.

Where the business carried on is a lawful business, such as lighting, or furnishing a domestic water supply in convenient form to a city of twelve thousand or fifteen thousand people, then, before the court shall issue its mandatory injunction demolishing the industry, it is its duty to weigh and balance

the respective inconveniences and losses of each party, and, if any other order as to the manner of conducting the business will remedy an inconvenience, make such other order. (*Atchison* v. *Peterson*, 87 U. S. 507, 22 L. Ed. 414; Story's Equity Jurisprudence, sec. 959*b*.)

The verdict is based on what the books term a mathematical impossibility. Such verdicts cannot stand even in law cases, though supported by what seems to be evidence. (Moore on Facts, sec. 153; *Nelson* v. *Big Blackfoot Milling Co.*, 17 Mont. 553, 44 Pac. 81.) The plaintiff in his complaint says that the detriment will always last as long as the dam is left there. That gives him a perfect right to avoid a multiplicity of suits. He may bring one suit for the entire damage to his land, by reason of this permanent structure being a nuisance permanent in its character. That the owner of adjacent land may bring one action for the whole damages, see *Watson* v. *Colusa Parrot*, 31 Mont. 517, 79 Pac. 14; *Chicago F. & B. Co.* v. *Sanche*, 35 Ill. App. 174. Where it is sought to enjoin a business lawful in its nature, the chancellor, instead of striking with his iron hand and eradicating it, should use his God-given intelligence to try and find out what method, if any, will enable the business to run without injury to anyone. (*McMenomy* v. *Baud*, 87 Cal. 134, 26 Pac. 795; *Daughtry* v. *Warren*, 85 N. C. 136; *Miller* v. *Burch*, 32 Tex. 208, 5 Am. Rep. 242.)

*Mr. Fred H. Hathhorn, Mr. Harry A. Groves,* and *Mr. M. Brown,* for Respondent.

The injury complained of is a nuisance *per se.* It cannot be claimed that the plaintiff cannot maintain his action for a mandatory injunction unless he can show substantial damages. (See *Allen* v. *Stowell*, 145 Cal. 666, 104 Am. St. Rep. 80, 79 Pac. 371, 68 L. R. A. 223; *Troe* v. *Larson*, 84 Iowa, 649, 35 Am. St. Rep. 336, 51 N. W. 179; *Carson* v. *Hayes*, 39 Or. 97, 65 Pac. 814; 2 Farnham on Waters, sec. 582; *Fitzpatrick* v. *Montgomery*, 20 Mont. 181, 63 Am. St. Rep. 622, 50 Pac. 416; 2 Wood on Nuisances, sec. 784.) If plaintiff will lose irre-

parably the right of property concerning which he brings suit, it is sufficient to entitle him to relief.   (22 Cyc. 763, note 25; *Oliphant* v. *Richman,* 67 N. J. Eq. 280, 59 Atl. 241.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is an action begun in Yellowstone county to compel the defendant to "lower, remove, or alter its dam in such a manner as to avoid" causing injury to plaintiff, and for damages sustained by the plaintiff "up to date." The complaint alleges that the plaintiff is, and for seven years has been, in possession of certain agricultural lands bordering on the Yellowstone river; that he has made application for leave to file upon said premises under the homestead laws of the United States, which application remains undetermined; that the hydro-electric plant of the defendant company is situated on the river below plaintiff's land; that a dam has been constructed across the river at a point about one-half mile below plaintiff's premises, which dam has been purchased, and is maintained at a height of ten feet, by the defendant; that during the months of June and July, 1908, the dam caused the river to overflow a portion of plaintiff's land and deposit dirt, sand, and sediment thereon, and caused the water to remain stagnant thereon "and to seep into his cellar and chicken-house"; that the stagnant water became foul, and caused the air to become impure and unhealthy; that, on account thereof, plaintiff became unwell, and his family were compelled to remove from their home and live elsewhere for a month; that, on account of the overflow, "it is now almost impossible for plaintiff to reach the river and water his livestock or to obtain water for household purposes," and it is now impossible for plaintiff to reach a certain spring on the premises to obtain water therefrom for any purpose; that the water overflowing the land destroyed four tons of hay and partially damaged a garden of about one-half acre, all to plaintiff's damage in the sum of $2,500. Plaintiff further alleges that previous to the completion of the dam, in November or December, 1907, he suffered no injuries of the nature complained of in

1908, and that, "if the defendant so maintains said dam, it will cause the waters of the Yellowstone river to overflow and remain upon the premises of plaintiff during the months of June and July of each succeeding year, and thus cause the plaintiff similar injury to crops, inconvenience, discomfort and annoyance as it has this year, and during the winter months said dam will cause the ice formed in said river to gorge in such a manner as to make it difficult to obtain water from the river, * * * and will cause said spring * * * to be completely covered with ice." The answer is substantially a denial of all, save the formal, allegations of the complaint.

The cause was tried before the court and a jury. A general verdict for $200 damages was found in favor of the plaintiff. and the jury also found specially (1) that plaintiff's premises were overflowed as alleged; (2) that the overflow was caused by defendant's dam; (3) that there is a reasonable probability that the overflow will so continue in future by reason of the defendant maintaining its dam; (4) that plaintiff suffered annoyance, inconvenience and damage therefrom; (5) that the spring has not been damaged by ice gorges; (6) that sediment and dirt have been deposited in the channels between plaintiff's tillable land and the main channel of the Yellowstone river on plaintiff's land; that said deposits were caused by the dam, and have caused plaintiff annoyance, inconvenience and damage; (7) that there is a reasonable probability that the conditions complained of will continue; (8) that the construction and maintenance of the dam was the proximate cause of the high water in June and July, 1908, and the consequent damage to plaintiff; (9) that the ranch is less valuable on account thereof and the rental value has been decreased thereby. The court adopted the findings of the jury and made two others in addition thereto: (1) That, if the defendant maintains its dam as the same is now being maintained, the plaintiff will suffer irreparable injury; and (2) will be compelled to commence a multiplicity of suits to protect his rights. The court also concluded as matter of law as follows: (1) That the dam of the defendant, the Billings & Eastern Montana Power Company, is a nuisance.

(2) That the defendant be compelled to abate said nuisance within a certain time, to be specified by the court. (3) That a decree be drawn in accordance with the foregoing order, and the plaintiff be given until May 1, 1909, in which to abate the nuisance or modify, change, and alter its dam. A decree was then entered in favor of the plaintiff, which decree contains the following order: "That the defendant, the Billings & Eastern Montana Power Company, be and is hereby ordered to rebuild and repair on or before the first day of May, 1909, its dam described in plaintiff's complaint in such manner as to remedy the evils found to exist by the court in its findings of fact, and, if said dam cannot be rebuilt or repaired so as to remedy said evils, then the defendant company shall remove the same. Provided, however, that, if said time for rebuilding or removal is not sufficient, then the same may be extended at the discretion of the court." From this decree and an order denying a new trial the defendant appeals.

1. It is contended that the cause should be reversed for the reason that the "testimony clearly preponderates against the decision of the lower court." We cannot agree with this contention. Appellant claims that the findings are based upon a mathematical impossibility, and, in support of this claim, counsel say: "The impossibility is shown by the fact that plaintiff's land is one-half mile upstream, the dam holds the water two feet above the (natural) bottom of the river,   *   *   *   and the fall of the river is ten or twelve feet to the mile.   *   *   *   We say that the statement that a dam two feet above the natural bottom of a stream backs water over the surface of the ground one-half mile upstream, when the fall of the river is ten to twelve feet to the mile, is incredible." And they argue that a verdict or decision based upon a mathematical impossibility cannot stand. We have read all the evidence. The testimony upon which appellant bases its contention is not scientific and is somewhat unsatisfactory; while, on the other hand, plaintiff's witnesses testified positively that the water was backed up by the dam to and over plaintiff's land, and that, on several occasions, it stood there for such a length of time as to become stag-

nant and foul, and this testimony is corroborated in some particulars by defendant's witnesses. We conclude that the findings of the court are sustained by substantial testimony, and that we ought not to disturb them.

2. Defendant offered to prove by the plaintiff that the "entire profit of the entire land or ranch has not been in any one year during the seven years immediately preceding 1908 as much as $801." The court sustained an objection to the evidence as incompetent, and the ruling is assigned as error. The significance of the exact sum mentioned in the offer ($801) has not been explained to us; but it is contended that the defendant had a right to have the testimony go to the jury as bearing upon the question of the impairment of the rental value of the land. The jury found that the rental value of the land had been decreased because of the construction and maintenance of the dam, but this finding, if at all pertinent, is probably only material to the question whether or not an injunction should issue, because no claim for damages is made by the plaintiff on account of impairment of rental value, and the damages awarded ($200) may all be attributed to specific losses as to which he testified in support of his complaint.

3. The court refused to allow the defendant to prove that the plaintiff made no claim for damages, and gave the defendant no itemized statement thereof before the commencement of the action. It is admitted that no such demand was necessary in order to maintain an action for damages or to abate a nuisance; but it is argued the court should have received the testimony before deciding that the plaintiff would be driven to a multiplicity of suits. We think the testimony was properly excluded in view of what is hereafter to be said regarding the right of the plaintiff to injunctive relief based upon the findings of fact. Not only that, but the defendant is presumed to have intended the natural consequences of its act in maintaining the dam, and is therefore chargeable with notice of whatever conditions resulted from that act. It cannot complain, therefore, that the plaintiff failed to give notice that he had been injured and demand redress therefor. We do not decide that a court

of equity need not take into consideration in a proper case the fact that the defendant has had no notice of the plaintiff's claim, but only that in this case no error was committed in refusing to admit the testimony.

4. The main contention of the appellant is thus stated in the brief of its counsel: "The chief point to be considered in this case is on the relevancy and admissibility of the defendant's offer to show that its dam cost $120,000 to build. We take it to be the law * * * in this jurisdiction that where the business carried on is a lawful business, such as lighting or furnishing a domestic water supply in convenient form to a city of twelve thousand or fifteen thousand people, then, before the court will issue its mandatory injunction demolishing the industry, it is the duty of the court to weigh and balance the respective inconveniences and losses of each party, and, if any other order will remedy such inconvenience, make such other order. * * * Balancing the comparative inconveniences and losses, * * * what is the inconvenience or detriment of Mr. Wilhite? A temporary absence of a month or two from home on the part of Mrs. Wilhite was all that it was claimed to have caused, with the exception of four tons of alfalfa hay, $12 worth of strawberries, and the flooding of a root cellar, and the muddying of a path to the spring. * * * Against that we have the cutting out of a dam which supplies the people of Billings with water and light." And again: "We believe that no fair-minded man can say that the chancellor did not act erroneously in ordering this dam rebuilt by May 1, 1909. * * * A reasonable interpretation of the evidence would show that for the present an injunction that the flash-boards be taken off before the high-water season, which is a fixed season, would be sufficient injunction for the present." Also: "Is a judgment commanding defendant to *rebuild* proper when it is shown by the evidence that the entire added height above the original water level is caused by certain temporary structures called flash-boards, cheaply removable? Should the chancellor not have commanded a removal of the flash-boards during high water (a well-ascertained season, June and July) and withheld

his command to rebuild until the effect was ascertained of such removal of flash-boards, if there was any damage done last season, when the flash-boards were on?''

Several very recent cases bearing upon the duty of the chancellor under certain circumstances are called to our attention by the appellant's counsel, notably those cited by Judge Hunt in the circuit court of the United States for the ninth circuit, district of Montana, in deciding the case of *Bliss* v. *Anaconda Copper Mining Co.*—lately pending before him—(C. C.) 167 Fed. 342. But the difficulty we encounter is that the facts of this case do not bring it within the rules laid down in the cited cases. We have examined many of the cases referred to, and find that in these cases a strong showing was made at the trial, based generally upon allegations in the answer, which would warrant the court in concluding that the demand of the plaintiff, if granted, would result in so great damage to the defendant and to others dependent upon the defendant's operations, as that, in comparison therewith, the damage caused the plaintiff was insignificant. The offer was to prove that the dam cost $120,000 to build. The witness Rowley, of whom the question was asked, had already testified that he and his associates built the dam and sold it to the defendant company on June 8, 1908; that it was in course of construction for over twenty years. He said: ''We have been working on what is now the dam for quite a good many years. When we first dug the channel out, we went down to the bottom of the river bed. It was very much higher than it is now. About two years after we cut the canal in there, the channel deepened from what it had been, and we found we could not get the water in the canal. The surface of the water was so much lower than the canal, so we started to put an obstruction in there to hold the bottom up to pretty nearly the old original point, so we would be able to divert the water to the canal. We have been working hard with it for a number of years without succeeding in putting in anything in the shape of a dam. This was filled largely with rock, and we found that high water would destroy this rock dam more or less, so we put a concrete top on over the top of

the rock." There is in the record no testimony whatsoever that the defendant is supplying the city of Billings with light, power, or water, or that it is a public service corporation, or even that it is actually operating any part of its plant. The court found that the maintenance of the dam was a nuisance. Plaintiff's damage, although of small amount measured in money, is nevertheless substantial. No attempt was made to show that the defendant cannot avoid injuring plaintiff without tearing out its dam, or without great expense. So far as we know, it may easily be within the power of the defendant at slight expense to guard against any injury. The fact that the defendant's predecessors expended $120,000 before they succeeded in completing the dam furnishes, in the light of Mr. Rowley's testimony as to the mistakes made and difficulties encountered, no evidence to us as to the magnitude of the defendant's interests at the present time.

It is suggested by counsel that all that is enjoined upon the defendant in the first instance is the removal of its flash-boards during the high-water season. But the testimony shows without contradiction that the flash-boards were not on the dam in June and July, 1908. The plaintiff was asked: "They would practically have to remove the entire dam in your opinion to obviate the bringing of the water around your house?" And his answer was: "No, I don't believe that."

Counsel for the defendant in their brief suggest several means which they would have been willing to adopt to save the plaintiff harmless had an opportunity been given. And it may also be suggested, if the statements in appellant's brief as to the nature of its business are correct, that condemnation proceedings might have the desired result. We take notice that this is the usual method of adjusting such controversies. But, as we read the record, this is a simple and ordinary case of maintaining a nuisance, to the plaintiff's damage. We, however, disagree with the court's conclusion that the dam itself is a nuisance.

The injunction order of the court below is entirely too broad and drastic. All the plaintiff may properly ask is that he be not injured in the future. There is no evidence that it is neces-

sary to rebuild, repair or remove the dam in order to accomplish this end. The order should command the defendant within a reasonable time to abate the nuisance which it is maintaining with reference to the plaintiff's property, and to refrain from causing him injury in the future, and, in order to accomplish the result herein commanded to be attained, that it shall employ the necessary and requisite means, whatever the same may be, to obey the order of the court, at its peril. This court will, in proper cases, order the entry of interlocutory restraining orders, either mandatory or prohibitory, as the case may require; but we find in this record no warrant for making such an order in this case.

The cause is remanded to the district court, with directions to modify the decree in accordance with the views herein expressed, and, as so modified, the same will be deemed affirmed. Appellant to pay the costs of this appeal.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied May 5, 1909.