No. 83-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

JERRY L. SMITH and VICKI E. SMITH,

Plaintiffs and Appellants,

-vs-

THE RAVALLI COUNTY BOARD OF HEALTH,
DON MULLIN and JAY SACKS,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Richard A. Weber, Jr., Hamilton, Montana

For Respondents:

Robert Brown, County Attorney, Hamilton, Montana
Boone, Karlberg & Haddon; Randy Cox, Missoula, Montana
Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs: January 24, 1984

Decided: April 19, 1984

Filed: APR 19 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This case arose out of a dispute between adjacent landowners in Ravalli County. Appellants objected to the installation of a septic tank and drain field on property owned by respondent Jay Sacks. The District Court denied appellants' request for a preliminary injunction and from this order appeal is taken. We affirm.

In the Spring of 1983, respondent Jay Sacks applied to the Ravalli County Health Department for a permit to construct a septic tank and drain field on real property owned by him in the Three Mile area of Ravalli County. In early April of 1983, respondent Don Mullin, the Ravalli County Sanitarian, made an on site inspection to determine the seasonal high groundwater level. This test was done to assure compliance with regulations promulgated by the Ravalli County Board of Health. These regulations require a separation of fifty-four inches between the seasonal high groundwater level and the undisturbed ground surface before a septic tank system may be installed. A test hole six feet deep was dug on the Sacks' property and no water was found. Mullin did find a layer of discoloration at fifty-seven inches below the surface, which he testified indicated the seasonal high groundwater level. He further testified that this was a standard method of determining the groundwater level. Based on this test, Mullin issued an information card which allowed Sacks to receive a permit to install the septic tank system. The permit was issued on June 24, 1983, and construction of the system began.

In mid-June appellants noticed an unusual taste in their water. Also at that time, an irrigation ditch

2

overflowed partially flooding their property. These events caused appellants to be concerned about Sacks' installation of the septic tank system. Their concerns were expressed to the Ravalli County Board of Health and to the Sacks themselves. The septic tank system was moved from the proposed site to a location further from appellants' well as a result of discussions between appellants and the Sacks, and despite appellants' continuing objections, construction of the system began.

Between June 27 and June 29, 1983, appellants tested the water of several wells in the area for contaminating material. The test disclosed that all the wells contained coliform bacteria in small amounts, but there was no trace of fecal bacteria. This indicated that there was no contamination from septic tanks in the area. At the time of the test Sacks' septic tank had not been installed. Fearing that the high water level may cause contamination of the well, appellants brought this action to prevent installation of Sacks' septic system.

A temporary restraining order was issued on July 1, 1983, restraining Sacks from placing his septic system into operation for ten days and restraining the Board of Health from issuing any more septic system permits in the area. During that period of time appellants arranged for two further measurements of the groundwater level. On July 6, 1983, Joseph Strasko dug a test hole on the Sacks' property to determine the groundwater level. Strasko is a registered sanitarian employed by the Water Quality Bureau of the Montana Department of Health and Environmental Sciences. Strasko determined that the actual groundwater level was between fifty-two and fifty-six inches below the surface.

Dr. William Woessner, Associate Professor in Hydrology at the University of Montana, measured the groundwater level through a stand pipe in mid July of 1983. He determined that the level was approximately forty-seven and a half inches from the surface of the ground.

The temporary restraining order expired on July 11, 1983. On July 14 and July 27, 1983, hearings were held on appellants' motion for a preliminary injuction. Documentary and testimonial evidence was introduced at both hearings, and briefs were filed by the parties. On August 12, 1983, the District Court denied appellants' motion finding that they had not shown their property would be injured if the injunction did not issue, and if it were injured they have an adequate remedy at law through an action for money damages. From this ruling, appeal is taken.

We first note that there essentially were two temporary restraining orders issued. The first restrained Sacks from placing his septic system into operation and the second restrained the Board of Health from issuing permits for any septic systems in the area of appellants' property. However, both were issued for the same purpose, to prevent any possible contamination of appellants' well. Appellants' request to convert both to a preliminary injunction was also denied for the same reason, that appellants had not shown irreparable harm would occur if the injunctions were not issued. Since their denial was based on the same reason, they will be treated as one for purposes of our discussion in this opinion.

The allowance of a preliminary injunction is vested in the discretion of the District Court, the exercise of which the Supreme Court will not interfere with except in instances

of manifest abuse. Porter v. K and S Partnership (Mont. 1981), 627 P.2d 836, 38 St.Rep. 648. In reviewing this discretion, the question is whether the trial court acted, "[A]rbitrarily without the employment of conscientious judgment or exceed[ed] the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice." In Re the Marriage of Jermuson v. Jermuson (1979), 181 Mont. 97 at 100, 592 P.2d 491 at 493; citing Porter v. Porter (1970), 155 Mont. 451, 473 P.2d 538. Injunctive relief is proper only if:

> "an act has been done or is threatened which will produce irreparable injury to the party asking for such relief, and acts which result in a serious change of, or are destructive to, the property affected either physically or in the character in which it has been held or enjoyed, do an irreparable injury."

Madison Fork Ranch v. L and B Lodge Pole Timber Products (Mont. 1980), 615 P.2d 900 at 906, 37 St.Rep.1468 at 1474. The issue thus becomes whether the District Court abused its discretion in determining that no irreparable harm would be done to appellants' property if the injuction did not issue.

We find no abuse of discretion on the facts of this case. We have reviewed the record carefully and find no evidence that appellants' property will be damaged if the Sacks' septic system becomes operable. At best appellants have only advanced speculation that sewage from the Sacks' system would contaminate their well.

The tests for bacteria showed no evidence of fecal bacteria in either appellants' or any other wells, indicating that no sewage was leaking into their well. The unusual taste of appellants' water could have come from other bacteria in the soil which the tests proved were present. Even if

5

there had been fecal bacteria in the water, it would have provided no conclusive answer since the Sacks' system had never operated before the test samples were taken.

The majority of appellants' case below was spent trying to prove that the seasonal high groundwater level was above the fifty-four inch level required by county regulations. The testimony on the groundwater level was mixed, and it was clearly within the trial court's discretion to find that the regulations had been complied with. Two experts testified that the groundwater level was below fifty-four inches, and one testified that it was above fifty-four inches. The trial court obviously thought the former testimony more credible, and it was within its discretion to do so. In addition to this, the system was over 180 feet horizontally from appellants' well, where the county regulations only require a 100 foot separation. Even if the regulations had not been complied with, it would not mean that as a matter of course the Sacks' septic system would contaminate appellants' well. Numerous variables would bear on this, including the direction of groundwater flow and the horizontal separation between the septic system and well. In sum, no connection was made between Sacks' septic system and appellants' well.

The District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7