No. 92-388

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

D. MICHAEL CURRAN,

        Plaintiff and Appellant,

  -vs-

DEPARTMENT OF HIGHWAYS
OF THE STATE OF MONTANA,

        Defendant, Respondent
             and Cross-Appellant.

APPEAL FROM:  District Court of the First Judicial District,
              In and for the County of Lewis and Clark,
              The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William G. Sternhagen; Sternhagen Law Firm, Helena,
          Montana

      For Respondent:

          Stephen F. Garrison, Nick A. Rotering & James R.
          Beck, Legal Services, Department of Transportation,
          Helena, Montana

Submitted on Briefs:  December 17, 1992

Decided:  April 29, 1993

FILED

Filed:

APR 29 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Appellant D. Michael Curran (Curran) appeals an order of the First Judicial District Court, Lewis and Clark County, denying his request for an injunction and dismissing his complaint against the Montana Department of Highways (Department). The Department cross-appeals. We affirm.

Montana Highway 200 crosses Flat Creek on Curran's property in Lewis and Clark County northeast of Bowmans Corner. In 1985 the Department reconstructed the highway across Curran's property, removing a large wooden bridge over Flat Creek and replacing it with twin culverts. Construction of the new stream crossing required a United States Army Corps of Engineers permit, which in turn required the concurrence of the United States Environmental Protection Agency, the United States Fish and Wildlife Service, and the Montana Department of Fish, Wildlife and Parks. To obtain the approval of these agencies, the Department revised its original plans and built the twin-culvert structure to conform to their standards.

In February 1986, during a flood caused by melting snow, the new culverts were blocked by ice and debris. The creek overflowed, covering approximately seventeen acres of Curran's grazing land. The overflow caused erosion and left debris and gravel on the land after the flood subsided. Curran had to move cattle and feed from the affected area and thus was unable to use the land for its ordinary purposes.

In his complaint, filed in April 1987, Curran alleged that the

2

Department had a duty to use ordinary care and skill in replacing the existing bridge and that it breached its duty by ignoring stream flow and engineering standards when it installed twin culverts that were too small to handle the flood waters. Causing the resulting flood, Curran charged, was a trespass by the Department. Further, Curran alleged, the new installation created a situation that was likely to recur unpredictably in the future, creating a continuing nuisance and future damages that could not be redressed by a legal remedy.

Curran's original complaint prayed for past and future damages and for a mandatory injunction requiring the Department to replace the stream crossing with a crossing of adequate size and design that would prevent future flooding of his property, prevent future trespasses, and abate the nuisance.

In November 1990, however, Curran amended his complaint, deleting the request for damages and leaving only the request for a mandatory injunction. The Department moved in July 1991 to deny the injunction, and in June 1992 the District Court granted the Department's motion and dismissed Curran's complaint with prejudice. Curran appealed.

We have restated the issues on appeal as follows:

1. Whether a mandatory injunction is an appropriate remedy in this case.

2. Whether the twin-culvert stream crossing created a nuisance under § 27-30-101, MCA.

As our holding on the first issue is dispositive, we do not address the second issue.

3

A district court may issue an injunction when it appears that the commission or continuance of an act will produce "irreparable injury" to the party seeking such relief. The granting of an injunction is discretionary, and we will sustain it unless an abuse of discretion is shown. Madison Fork Ranch v. L & B Lodge Pole Timber Products (1980), 189 Mont. 292, 302, 615 P.2d 900, 906. The same standard of review applies to a District Court's denial of an injunction. Smith v. Ravalli County Board of Health (1984), 209 Mont. 292, 679 P.2d 1249. Here, we conclude that the District Court did not abuse its discretion in denying Curran's request for an injunction.

The Department argues that an injunction is not an appropriate remedy when "a plain, adequate, and speedy remedy at law" is available, and that such a remedy is available in the form of inverse condemnation. The Department relies chiefly on our decision in Riddock v. City of Helena (1984), 212 Mont. 390, 687 P.2d 1386. In Riddock we held that:

> The landowner's only remedy for the City's construction
> of a pipeline on his land without obtaining an easement
> is an inverse condemnation action for just compensation
> for the value of the easement on the date of the taking.

687 P.2d at 1388. Riddock had asked for compensation for an alleged taking of land without compensation, or in the alternative for an injunction requiring the city to remove its pipeline. The court granted summary judgment for the city on the grounds that Riddock, as the successor in interest to the person who had owned the land when the city built the pipeline, had no right to compensation. The former landowner had a right to compensation

4

through inverse condemnation, though he did not pursue it; therefore, an injunction was not an available remedy for Riddock.

Our rule in Riddock is based on the theory that to allow a landowner injunctive relief would permit that landowner to defeat a public entity's power of eminent domain. 687 P.2d at 1388. We believe that as a matter of public policy the better alternative is to ensure compensation for a damaged landowner, like Curran, by requiring the state to purchase any property it takes for a public purpose. See Hurley v. Kincaid (1931), 285 U.S. 95, 104, 52 S.Ct. 267, 269, 76 L.Ed. 637, 643 (where a federally-sponsored flood control project threatened to flood the plaintiff's land, failure to compensate him for taking his property "affords no basis for an injunction if such compensation may be procured in an action at law").

Curran points out that in Riddock the plaintiff did not allege nuisance or trespass and argues that the case should be distinguished. Further, Curran argues, he is not asking for damages in any form, but for an abatement of the nuisance caused by the Department's stream crossing. He cites a 1909 opinion in which we left open the possibility that an injunction ordering a power company to remove its dam might be warranted. Wilhite v. Billings & Eastern Montana Power Co. (1909), 39 Mont. 1, 101 P. 168.

In Wilhite the defendant's dam flooded the plaintiff's land, and the plaintiff requested an order compelling the defendant to lower, remove, or alter its dam in such a way as to avoid further damage to his property. The trial court ordered the power company

5

to rebuild and repair its dam, but we remanded the case for a modified order that merely required the power company to abate the nuisance, commenting that the trial court's injunction was "entirely too broad and drastic," and that "there is no evidence that it is necessary to rebuild, repair, or remove the dam." We concluded:

> This Court will, in proper cases, order the entry of interlocutory restraining orders, either mandatory or prohibitory, as the case may require; but we find in this record no warrant for making such an order in this case.

101 P. at 171.

Here, too, we find no warrant for an order compelling the Department to reconstruct its stream crossing. If Curran can show, however, that the Department's stream crossing caused Flat Creek to inundate his land, then he may be entitled to compensation for a physical taking of his property. We held in Knight v. City of Missoula (1992), 252 Mont. 232, 243, 827 P.2d 1270, 1276, that "a property owner may recover in an inverse condemnation action where actual physical damage is proximately caused to his property by a public improvement."

If Curran's loss can be compensated, of course, it is not an irreparable injury. He voluntarily waived damages by amending his complaint so as to limit his remedy to a mandatory injunction, but his waiver does not create an irreparable injury. Without a showing of an irreparable injury, Curran is not entitled to a mandatory injunction.

As Curran has not shown that his property was irreparably damaged, or that inverse condemnation would not be an adequate

6

remedy, the District Court concluded correctly that his only remedy is an action for condemnation or damages.

The Department filed a cross-appeal, raising an issue not addressed by the District Court: whether the District Court has jurisdiction to order the Department to replace the stream crossing.

The Department argues that even if the District Court had ordered the Department to rebuild the stream crossing, the Department could not have done so without a permit from the United States Army Corps of Engineers, pursuant to 33 U.S.C. § 404 (the Clean Water Act). Further, the Department argues, because the District Court has no authority to order the Corps of Engineers to issue such a permit, the Department could find itself enjoined to rebuild a bridge that is prohibited by the federal government.

Because we affirm the District Court's decision to deny the injunction, we need not address this issue. Federal permit requirements would be a consideration only if the District Court had decided to grant the injunction.

Affirmed.

_____
John Conway Harrison
Justice

We concur:

_____
J. A. Turnage
Chief Justice

_____
William E. Hunt Sr.

_____
R. C. McDonough

7

_____

_____
Justices

8

Justice Karla M. Gray dissenting.

I respectfully dissent. The majority totally fails to address the alleged nuisance which is the pivotal issue in this case, and the availability of an injunction in a nuisance setting; in so doing, it ignores altogether the Decision and Order of the District Court which is before us for review. As a result, it is my view that the majority opinion is not only incorrect, it is substantially irrelevant to the case before us. Based on the analysis set forth below, I would reverse the District Court and remand for further proceedings.

As a threshold matter, I note that the District Court's decision was issued prior to any factual determinations being made in the case. While that decision granted the Department's Motion to Deny Injunction, rather than ruling on a Rule 12(b)(6), M.R.Civ.P., motion to dismiss, it is clear that the court accepted Curran's allegations as true for purposes of its decision. I will do the same.

In general, the District Court determined that Curran's nuisance allegations and request for injunction against a continuing nuisance "would be well taken but for" the fact that both arose out of the Department's construction of a stream crossing pursuant to statutory authority. Specifically, the court first determined that, taking Curran's allegations as true, it is "likely" the flood waters complained of could be considered a

nuisance under § 27-30-101(1), MCA. The court went on to note that subsection (2) of that statute provides that nothing done or maintained under the express authority of a statute can be deemed a nuisance. I agree with the District Court's analysis to this point.

The court then correctly determined that § 60-2-201, MCA, expressly authorized the Department to construct the stream crossing. On that basis, it concluded that no injunction was available because the <u>flood waters</u> could not constitute a nuisance, as a matter of law, pursuant to § 27-30-101(2), MCA. Having thus removed the nuisance question from the case, the District Court based its determination that an injunction was not available on <u>Riddock</u>, a case not involving a nuisance.

It is my view that the District Court erred in these latter stages of its analysis. It is true that § 60-2-201, MCA, expressly authorized the Department to construct the stream crossing. Nothing in that statute, however, authorizes the Department to create and maintain flood waters on the private property of a Montana citizen, the circumstance asserted by Curran to constitute a nuisance. The District Court's statutory analysis is contrary to established principles and recent case law.

This Court has repeatedly held that a governmental entity is entitled to no more deference than a private citizen in matters of creating a nuisance. Knight v. City of Missoula (1992), 252 Mont. 232, 247, 827 P.2d 1270, 1279; Walton v. City of Bozeman (1978),

10

179 Mont. 351, 356, 588 P.2d 518, 522; Lennon v. City of Butte (1923), 67 Mont. 101, 106, 214 P. 1101, 1102-3. In each of those cases, we expressly rejected the governmental entity's argument that § 27-30-101(2), MCA, prevented a claimant from asserting a nuisance claim against it. In Knight, we stated that:

> [W]hen a governmental entity in its method of administration of . . . [its governmental powers] creates a nuisance it is not exercising the governmental function but is doing something forbidden by law.

Knight, 827 P.2d at 1279.

Here, no statute expressly authorized the actions of the Department alleged to constitute a nuisance--namely, the creation and maintenance of flood waters on private property. Therefore, the District Court erroneously concluded that § 27-30-101(2), MCA, prevented a finding of nuisance as a matter of law.

Once the nuisance claim is correctly reinserted in this case, and assuming with the District Court that Curran can establish a continuing nuisance, the availability of an injunction can properly be addressed. This Court has consistently held that an injunction is a proper remedy to abate a continuing nuisance. Boyer v. Karagacin (1978), 178 Mont. 26, 32, 582 P.2d 1173, 1177-8; Floyd v. City of Butte (1966), 147 Mont. 305, 313, 412 P.2d 823, 827; Wilhite v. Billings & Eastern Montana Power Co. (1909), 39 Mont. 1, 11, 101 P. 168, 171. In cases of continuing nuisance, damages are inadequate because the injured party is forced to bring a multiplicity of suits in successive actions for the recurring injury. See Floyd, 412 P.2d at 827; Hart v. Wagner (Md. 1944), 40

11

A.2d 47, 50.

I will not address at any length the majority's inverse condemnation theory. I note, however, that the availability of such a remedy is entirely speculative on the limited record before us. In addition, as noted above, Riddock was itself an inverse condemnation case, not a nuisance case. We determined that an injunction was not an alternative or cumulative remedy to the inverse condemnation claim.

In this regard, it is interesting to note that neither party appears to assert--at least consistently--the propriety or availability of an inverse condemnation claim. Curran argues that no "public purpose" is served by the flooding of his land. In its answer to Curran's complaint, the Department asserted as an affirmative defense that any flooding was attributable solely to a combination of warm weather and rain; in support of its Motion to Deny Injunction, it averred via affidavit that the creek had flooded Curran's land prior to the installation of the culverts. The only fair characterization of this position is that the Department contends that no "taking" occurred. Thus, the record positions of both parties run counter to the existence of the elements necessary for an inverse condemnation action and, therefore, to the availability of such an action to Curran as a remedy.

I also disagree with the majority's characterization of Wilhite. We concluded in Wilhite that an injunction was available

12

under the circumstances of that case, circumstances that are, as the District Court stated, "so similar to the case at bar." We stated that the record showed a simple and ordinary case of maintaining a nuisance to the plaintiff's damage. Wilhite, 101 P. at 171. The majority's statement that we "left open" the possibility of an injunction in Wilhite is simply incorrect; we expressly approved of an injunction to abate a nuisance against an entity with the power of eminent domain, remanding only for the district court to narrow the scope of the injunction it had issued. Wilhite, 101 P. at 171. Finally, the majority erroneously concludes as a matter of law that no injunction is available in this case and then makes unstated and entirely premature factual determinations in order to "find no warrant" for the issuance of an injunction of a certain scope. I cannot agree.

As a final matter, I agree wholeheartedly with the majority's statement of public policy that we should ensure compensation for a damaged landowner by requiring the State to purchase any land it takes for a public purpose. The statement has little relevance to the case before us, however. Curran does not claim that the Department has taken his property; he maintains that the Department is maintaining a nuisance upon it.

The threshold issue before us is whether, taking Curran's allegations as true, he may be able to establish a nuisance or whether, as the District Court concluded and the majority does not discuss, he cannot establish a nuisance as a matter of law. Upon

13

that determination revolves the ultimate issue of whether an injunction is available.

I would reverse the District Court's determination that the flood waters cannot constitute a nuisance as a matter of law and remand for further proceedings.

_____
Justice

Justice Terry N. Trieweiler joins in the foregoing dissent.

_____
Justice

14