JUSTICE GRAY
dissenting.
I respectfully dissent. The majority totally fails to address the alleged nuisance which is the pivotal issue in this case, and the availability of an injunction in a nuisance setting; in so doing, it ignores altogether the Decision and Order of the District Court which is before us for review. As a result, it is my view that the majority opinion is not only incorrect, it is substantially irrelevant to the case before us. Based on the analysis set forth below, I would reverse the District Court and remand for further proceedings.
As a threshold matter, I note that the District Court’s decision was issued prior to any factual determinations being made in the case. While that decision granted the Department’s Motion to Deny Injunction, rather than ruling on a Rule 12(b)(6), M.R.Civ.P, motion to dismiss, it is clear that the court accepted Curran’s allegations as true for purposes of its decision. I will do the same.
In general, the District Court determined that Curran’s nuisance allegations and request for injunction against a continuing nuisance “would be well taken but for” the fact that both arose out of the Department’s construction of a stream crossing pursuant to statutory authority. Specifically, the court first determined that, taking Cur-ran’s allegations as true, it is “likely’ the flood waters complained of could be considered a nuisance under § 27-30-101(1), MCA. The court went on to note that subsection (2) of that statute provides that nothing done or maintained under the express authority of a statute can be deemed a nuisance. I agree with the District Court’s analysis to this point.
The court then correctly determined that § 60-2-201, MCA, expressly authorized the Department to construct the stream crossing. On that basis, it concluded that no injunction was available because the flood waters could not constitute a nuisance, as a matter of law, pursuant to § 27-30-101(2), MCA. Having thus removed the nuisance question from the case, the District Court based its determination that an injunction was not available on Riddock, a case not involving a nuisance.
It is my view that the District Court erred in these latter stages of its analysis. It is true that § 60-2-201, MCA, expressly authorized the Department to construct the stream crossing. Nothing in that statute, however, authorizes the Department to create and maintain flood *111 waters on the private property of a Montana citizen, the circumstance asserted by Curran to constitute a nuisance. The District Court’s statutory analysis is contrary to established principles and recent case law.
This Court has repeatedly held that a governmental entity is entitled to no more deference than a private citizen in matters of creating a nuisance. Knight v. City of Missoula (1992), 252 Mont. 232, 247, 827 P.2d 1270, 1279; Walton v. City of Bozeman (1978), 179 Mont. 351, 356, 588 P.2d 518, 522; Lennon v. City of Butte (1923), 67 Mont. 101, 106, 214 P. 1101, 1102-3. In each of those cases, we expressly rejected the governmental entity’s argument that § 27-30-101(2), MCA, prevented a claimant from asserting a nuisance claim against it. In Knight, we stated that:
[WJhen a governmental entity in its method of administration of... [its governmental powers] creates a nuisance it is not exercising the governmental function but is doing something forbidden by law.
Knight, 827 P.2d at 1279.
Here, no statute expressly authorized the actions of the Department alleged to constitute a nuisance — namely, the creation and maintenance of flood waters on private property. Therefore, the District Court erroneously concluded that § 27-30-101(2), MCA, prevented a finding of nuisance as a matter of law.
Once the nuisance claim is correctly reinserted in this case, and assuming with the District Court that Curran can establish a continuing nuisance, the availability of an injunction can properly be addressed. This Court has consistently held that an injunction is a proper remedy to abate a continuing nuisance. Boyer v. Karagacin (1978), 178 Mont. 26, 32, 582 P.2d 1173, 1177-8; Floyd v. City of Butte (1966), 147 Mont. 305, 313, 412 P.2d 823, 827; Wilhite v. Billings & Eastern Montana Power Co. (1909), 39 Mont. 1, 11, 101 P. 168, 171. In cases of continuing nuisance, damages are inadequate because the injured party is forced to bring a multiplicity of suits in successive actions for the recurring injury. See Floyd, 412 P.2d at 827; Hart v. Wagner (Md. 1944), 40 A.2d 47, 50.
I will not address at any length the majority’s inverse condemnation theory. I note, however, that the availability of such a remedy is entirely speculative on the limited record before us. In addition, as noted above, Riddock was itself an inverse condemnation case, not a nuisance case. We determined that an injunction was not an alternative or cumulative remedy to the inverse condemnation claim.
*112 In this regard, it is interesting to note that neither party appears to assert — at least consistently — the propriety or availability of an inverse condemnation claim. Curran argues that no “public purpose” is served by the flooding of his land. In its answer to Curran’s complaint, the Department asserted as an affirmative defense that any flooding was attributable solely to a combination of warm weather and rain; in support of its Motion to Deny Injunction, it averred via affidavit that the creek had flooded Curran’s land prior to the installation of the culverts. The only fair characterization of this position is that the Department contends that no “taking” occurred. Thus, the record positions of both parties run counter to the existence of the elements necessary for an inverse condemnation action and, therefore, to the availability of such an action to Curran as a remedy.
I also disagree with the majority’s characterization of Wilhite. We concluded in Wilhite that an injunction was available under the circumstances of that case, circumstances that are, as the District Court stated, “so similar to the case at bar.” We stated that the record showed a simple and ordinary case of maintaining a nuisance to the plaintiff’s damage. Wilhite, 101 P. at 171. The majority’s statement that we “left open” the possibility of an injunction in Wilhite is simply incorrect; we expressly approved of an injunction to abate a nuisance against an entity with the power of eminent domain, remanding only for the district court to narrow the scope of the injunction it had issued. Wilhite, 101 P. at 171. Finally, the majority erroneously concludes as a matter of law that no injunction is available in this case and then makes unstated and entirely premature factual determinations in order to “find no warrant” for the issuance of an injunction of a certain scope. I cannot agree.
As a final matter, I agree wholeheartedly with the majority’s statement of public policy that we should ensure compensation for a damaged landowner by requiring the State to purchase any land it takes for a public purpose. The statement has little relevance to the case before us, however. Curran does not claim that the Department has taken his property; he maintains that the Department is maintaining a nuisance upon it.
The threshold issue before us is whether, taking Curran’s allegations as true, he may be able to establish a nuisance or whether, as the District Court concluded and the majority does not discuss, he cannot establish a nuisance as a matter of law. Upon that *113 determination revolves the ultimate issue of whether an injunction is available.
I would reverse the District Court’s determination that the flood waters cannot constitute a nuisance as a matter of law and remand for further proceedings.
JUSTICE TRIEWEILER joins in the foregoing dissent.