No. 86-122

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

LARRY BRANSTETTER and GERALDINE
BRANSTETTER,

        Plaintiffs and Respondents,

    and

BEAUMONT GREENS, INC., a Montana
corporation,

        Defendant and Respondent,

    -vs-

BEAUMONT SUPPER CLUB, INC.,

        Defendant and Appellant.


APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Richard C. Conover, Bozeman, Montana


    For Respondent:

        Scully, Lilly & Andriolo; Michael J. Lilly,
Bozeman, Montana
Lyman H. Bennett, III, Bozeman, Montana


Submitted on Briefs: August 21, 1986

Decided:  November 6, 1986


Filed: NOV 6 - 1986

_____
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal from a judgment entered by the District Court of the Eighteenth Judicial District, Gallatin County denying damages to Beaumont Supper Club, Inc. In this Opinion we will refer to Beaumont Supper Club, Inc., as Supper Club; to Beaumont Greens, Inc., as Developer; and to Larry and Geraldine Branstetter, as Branstetters.

We affirm.

Appellant Supper Club raises five issues on appeal.

1. Did the District Court err in finding that the respondents/plaintiffs, Branstetters, did not trespass on the real property lawfully being used and owned by appellant/defendant, Supper Club?

2. Did the District Court err in denying the appellant Supper Club's motion filed prior to trial to dismiss the cross-claim of the respondent/defendant Developer?

3. Did the District Court err in failing to grant appellant/defendant Supper Club's motion for attorney's fees requested pursuant to Rule 11 of the Montana Rules of Civil Procedure?

4. Did the District Court abuse its discretion by finding that the appellant/defendant Supper Club had been damaged in the total amount of $1,825.00 rather than the $6,785.00 it claimed?

5. Did the District Court err in failing to permit Supper Club to recover its damages as ascertained by the District Court?

In January, 1984, Branstetters were excavating on their newly-purchased lot in preparation for building a triplex.

The excavating contractor severed a sewer septic tank drain line which ran under the property and into a drain field. Branstetters discovered the sewer drain line belonged to Supper Club, which was located nearby. Branstetters contacted the owner of the Supper Club who promised to see that the septic tank was pumped to eliminate further problems. Branstetters consulted with the city building inspector and the county sanitation engineer and were told that to avoid possible health hazards, they should plug the drain line, and remove the contaminated soil and replace it with gravel or other material. Branstetters did so. Meanwhile, Supper Club was forced to have their septic tank pumped until they were able to connect to the city sewer system.

Originally, all the land near Branstetters and Supper Club had belonged to Frank Valgenti, Donald Bianchi, Richard Embry and William Boyer who sold one parcel to Supper Club and another parcel to Developer who sold a lot to the Branstetters. However, the warranty deed given to Branstetters by Developer showed no easement for the sewer line and drain system that ran under Branstetters' land.

In May, 1984, Branstetters brought suit for the damages they incurred. They sued Developer for breach of warranty of quiet enjoyment pursuant to the deed. They also claimed against Supper Club for trespass caused by construction of a septic system without their consent.

Developer answered and cross-claimed against Supper Club for indemnity and/or contribution. Supper Club moved to dismiss the cross-claim but that motion was denied. Supper Club answered and also cross-claimed against Developer for indemnity. In addition, Supper Club counterclaimed against

Branstetters in trespass for plugging the sewer line. After hearing on issues, at which Developer admitted negligence to the Branstetters for failing to discover the existence of the drain field, the District Court entered its findings of fact and conclusions of law.

The District Court found that because Developer admitted liability to Branstetters, the proper level of damages was $4,100. The District Court also found that because Developer admitted negligence, it owed Supper Club $1,825. The Court arrived at this figure by finding that the expenses incurred by Supper Club in connecting the sewer system ($6,200) would have been necessary in a year or two in any case. Therefore, the District Court awarded interest of 10% on the $6,200 for two years in the sum of $1,240. In addition, the court awarded the cost of pumping the septic tank ($585) for a total of $1,825. The court also found that Supper Club was not guilty of trespassing on Branstetters' land, and that Supper Club was not jointly and severally liable with Developer to the Branstetters.

After a series of motions, the District Court entered an order striking the damages awarded to Supper Club against Developer because Supper Club had not, at any time, cross-claimed in negligence against Developer. Judgment was entered in favor of Branstetters and against Developer for $4,100. Supper Club filed another motion to amend. The District Court entered another order finding that Branstetters had not trespassed against Supper Club in digging up or plugging the drain field.

The first issue that Supper Club raises on appeal is whether the District Court erred in finding that the Branstetters did not trespass on the septic system owned and

used by the Supper Club. The District Court found that trespass involves an intentional intrusion upon the land of another. The court stated that Branstetters were rightfully excavating the ground they owned pursuant to a warranty deed. Since they had no notice of the drain line, the court held they were innocent of the charge of trespass.

The elements of the tort of trespass to real property are set out in Restatement (Second) of Torts § 158 (1965) as follows:

> § 158. <u>Liability for Intentional Intrusions on Land</u>.
>
>     One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in possession of the other, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.

Intent is defined in Restatement (Second) of Torts § 8A (1965) as:

> The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences [sic] of his act, or that he believes that the consequences are substantially certain to result from it.

The District Court found, and we agree, that no intentional intrusion upon the land of another has been shown in this case. Supper Club argues that even if the initial severing of the drain line was unintentional, the later plugging of the line and destruction of the drain field by removal of the contaminated soil was intentional. Appellant relies on the Mountain States Telephone and Telegraph Company v. Kelton (Ariz. 1955), 285 P.2d 168 to argue the owners of the land should be held liable in trespass. Initially we note that <u>Mountain States</u> proceeded under a negligence theory, not on a trespass theory. In fact, the court states

that the contractor could not be held liable under a trespass theory for having dug up plaintiff's telephone lines because there was no proof of an intentional act. The contractor did not know of the line's existence, nor was he charged with knowledge for the purpose of determining intent. The owners were liable under a negligence theory because they had actual notice of a right of away for plaintiff's telephone lines but failed to tell the contractor.

If Mountain States has any application to the case at hand it shows that there could be no trespass when there was no knowledge or notice of the drain line. Branstetters' actions in plugging the drain line and removing the contaminated soil from the drain field were required in order for them to mitigate their damages and prevent a possible health hazard. The District Court was correct in finding that Branstetters did not trespass against anyone.

Next, Supper Club contends the District Court erred in denying its motion to dismiss Developer's cross-claim. At the same time they filed their answer, Developer filed a cross-claim against Supper Club for both indemnity and contribution. Supper Club contends this cross-claim should have been dismissed by the District Court, pursuant to their motion.

Rule 1, M.R.App.Civ.P. provides: "[a] party aggrieved may appeal from a judgment or order . . ." A party is aggrieved when it has a "direct, immediate and substantial interest in the subject which would be prejudiced by the judgment or benefitted by its reversal." Montana Power Co. v. Montana Department of Public Service Regulation (Mont. 1985), 709 P.2d 995, 1001, 42 St.Rep. 1750, 1757. Conversely, a party who is not aggrieved by a judgment may

not appeal from it. Carbon County v. Schwend (1979), 182 Mont. 89, 98, 594 P.2d 1121, 1126; In Re Stoian's Estate (1960), 138 Mont. 384, 393, 357 P.2d 41, 46. In this case, the District Court held that Supper Club was not jointly and severally liable with Developer to the Branstetters. The District Court held in favor of appellants on this issue thus they are not aggrieved parties within the meaning of Rule 1, M.R.App.Civ.P. and are not entitled to appeal.

The third issue raised by appellants is whether the District Court erred in failing to grant them attorney's fees pursuant to Rule 11, M.R.Civ.P. Appellant alleges that the action against it by the Branstetters and by Developer was frivolous and it should be awarded attorney's fees pursuant to Foy v. Anderson (1978), 176 Mont. 507, 580 P.2d 114. In Foy, we awarded attorney's fees to a litigant who was forced into a lawsuit despite the fact that she had asserted no claim against the plaintiff and had no intention of doing so. In the case at hand, the appellant defended itself at the District Court level, cross-claimed against Developer, and now appeals that it should have been awarded damages and yet at the same time maintains this is a frivolous lawsuit. The cause of action in question is not frivolous, it is the subject of a genuine controversy.

The fourth issue raised by appellants is whether the District Court abused its discretion by finding that the Supper Club had been damaged in the amount of $1,825. We decline to address this issue since it is rendered moot by the fact that the District Court ultimately did not award appellants any damages since none were claimed. See Montana Power Company v. Charter (1976), 173 Mont. 429, 568 P.2d 118;

State ex rel. Adams v. District Court (1970), 155 Mont. 309, 471 P.2d 537.

The last argument raised by appellants is that the District Court erred in failing to permit appellant to recover its damages. Appellant contends they should at least be able to recover $1,825 from Branstetters for trespass. We have already held the District Court did not err in refusing to find a trespass. The District Court disallowed the damages it awarded against Developer since the appellants did not plead or prove an action against Developer. The attorney for the Supper Club was well aware that he had not plead against Developer:

> THE COURT: That was one of the rules of the Court that you hadn't plead Mr. Conover against [Developer]. You just plead against Branstetter.
>
> MR. CONOVER: There was no claim against [Developer]. [Developer] had no title which they could convey to the Plaintiffs in this matter. They gave them a warranty deed, but it's like a third party conveying my property which I have no knowledge. They did nothing to me. They had no property in which they could convey.
>
> THE COURT: Why didn't you sue them?
>
> MR. CONOVER: Because there was no damage that was caused by their conveying something that they had not title to. They are conveying as I said, someone conveying my property away from me. They cannot convey it. They don't own it to convey it.
>
> . . .
>
> THE COURT: Wasn't that--I don't know if it was a compulsive counter-claim or cross-claim or not, but I never could figure out why you didn't plead against [Developer].
>
> MR CONOVER: This was an actual trespass on the Plaintiffs' property. The Plaintiffs were damaged, yes, and if the Plaintiffs had to pay us money because they trespassed on our property, I think there's every reason the Plaintiffs could recover that money from the [Developer], but that doesn't mean we have been damaged by it. They had no right to sell it in the first place.
>
> THE COURT: Who?

- 8 -

MR. CONOVER: The [Developer]. They had the title, they had already conveyed it to us.

THE COURT: Why didn't you sue them?

MR. CONOVER: We sued--we chose to sue the Plaintiffs. They trespassed on our property. There's no question about it. Your findings find that at least, I think, that the findings that you entered, support that we owned the equipment system, because of the severed drain line by the Plaintiffs, the Defendant Supper Club incurred pumping expenses of the septic tank.

THE COURT: I felt that you had a cause of action, but you never pled it against [Developer], and that's the reason I ruled like I did.

The District Court did not err in refusing to allow damages against Developer. The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 9 -