No. 93-485

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

RHONDA JO WOOLF f/k/a RHONDA JO EVANS,

      Petitioner and Appellant.

vs.

JOSEPH DOUGLAS EVANS,

      Respondent and Respondent.

FILED

APR 12 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Richard A. Simonton; Simonton, Howe & Schneider,
Glendive, Montana

      For Respondent:

          Laura Christoffersen; Christoffersen & Knierim,
Wolf Point, Montana


Submitted on Briefs:  January 7, 1994

Decided:  April 12, 1994

Filed:

/Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Rhonda Jo Woolf (Rhonda) appeals from an order of the Fifteenth Judicial District Court, Sheridan County, holding her in contempt. The court believed that Rhonda fabricated an incident of child sexual abuse to deprive her former husband, Joseph Douglas Evans (Joseph), of his telephonic visitation rights set forth in their dissolution decree. Rhonda asserts error in the court's contempt and evidentiary rulings. We affirm.

Rhonda and Joseph's marriage was dissolved in December of 1991. The dissolution decree granted Rhonda sole custody of their minor daughter, Caitlin. Joseph was granted reasonable visitation, including a ten-day visitation period every two months and the right to telephone Caitlin twice a week.

On January 19, 1993, Joseph filed a motion with the District Court requesting that his entitlement to a ten-day visitation period every two months be changed to a twenty-day visitation period every four months. Joseph sought the modification to address logistical difficulties, arising from Rhonda and Caitlin's move to Idaho, in exercising his visitation rights. Rhonda subsequently filed a motion for modification in an Idaho court which was later dismissed for lack of jurisdiction. Following a hearing held March 4, at which Rhonda did not appear, the District Court modified the dissolution decree to provide Joseph with a fifteen-day visitation period every three months.

The events leading to the court's contempt ruling occurred while the parties were attempting to modify the dissolution decree.

2

Caitlin, who was then three years old, visited her father from January 19 to February 2, 1993. For more than three weeks following that visit, Joseph continued to speak with Caitlin over the telephone; their last telephone conversation occurred on February 27. Joseph's attempts to call Caitlin on March 3, 4 and 6 were unsuccessful. On March 7, Rhonda's husband answered Joseph's telephone call, informed Joseph that unspecified charges were being brought, and advised Joseph not to call again. Rhonda intervened in, and refused, Joseph's subsequent attempts to speak with Caitlin.

On April 7, Joseph petitioned the District Court to issue an order directing Rhonda to show cause why she should not be held in contempt for violating the visitation rights specified in the dissolution decree. He also requested an award of attorney's fees incurred in enforcing his visitation rights. The District Court granted Joseph's petition and a show cause hearing was held on May 20. The District Court subsequently issued its findings of fact, conclusions of law, and order. The court held Rhonda in contempt, ordered that she comply with the dissolution decree, and awarded attorney's fees to Joseph.

Did the District Court err by holding Rhonda in contempt?

Contempt of court is a discretionary tool used to enforce compliance with a court's decisions. The power to inflict punishment by contempt is necessary to preserve the dignity and authority of the court. Marriage of Jacobson (1987), 228 Mont.

3

458, 464, 743 P.2d 1025, 1028.

As a general rule, contempt orders are final and not reviewable by this Court except by writ of certiorari. Section 3-1-523, MCA. We have created an exception in family law cases, however, and review contempt orders on appeal. In re Pedersen (Mont. 1993), 862 P.2d 411, 414, 50 St.Rep. 1338, 1340. Our review is limited to examining the record to determine whether the district court acted within its jurisdiction and whether evidence supports the finding of the court with respect to the contempt. Pedersen, 862 P.2d at 414. Rhonda does not raise a jurisdictional issue.

Here, the contempt ruling was based on the District Court's finding that the testimony of Rhonda and Joseph was consistent in important part and its belief that Rhonda had fabricated an incident of child sexual abuse in order to deprive Joseph of the visitation rights to which he was entitled. We review the record to determine whether evidence supports the contempt ruling.

At the hearing, Rhonda testified that she became aware of the alleged sexual abuse during a conversation with Caitlin a few days after the February 27 telephone call. In that conversation, Caitlin purportedly revealed that Joseph had touched her pubic area causing "redness" and "bleeding." Joseph testified that Caitlin's comments to Rhonda probably referred to his application of ointment to a rash Caitlin had during the January visit. Rhonda's own testimony indicated that the rash existed immediately prior to the visit. Thus, the testimony of both Joseph and Rhonda provided the

5

same explanation for Caitlin's comments regarding touching, redness and bleeding in the pubic area and supported the court's finding of consistent testimony.

To determine whether evidence supports the District Court's belief that Rhonda had fabricated the sexual abuse allegation, we examine the conflicting evidence advanced by Rhonda and Joseph. To justify her belief that Caitlin had been abused by Joseph, Rhonda testified as to the conversation in which Caitlin purportedly revealed the sexual abuse. The record is unclear, however, as to the date the conversation occurred. Although Rhonda testified that the conversation followed Joseph's unsuccessful telephone calls of March 3 and 4, she also testified that her conversation with Caitlin took place a few days after the February 27 telephone conversation and that she knew of the alleged sexual abuse prior to March 4.

In addition to the purported conversation with Caitlin, Rhonda testified that she believed Caitlin had been sexually abused by Joseph because of a change in Caitlin's behavior. Rhonda stated that Caitlin would become upset and begin to cry during her telephone conversations with Joseph following the January visit. She also testified that Caitlin began to frequently wet herself and have nightmares following the February 27 telephone conversation with Joseph. She presented no other evidence to support her account of Caitlin's behavioral changes.

Rhonda also testified that, on unspecified dates, she took Caitlin to Dr. Hal W. Davis, a physician at a children's medical

5

center, and to an unnamed social worker at the Idaho Department of Health and Welfare. She attempted to justify her termination of the telephonic visitation by repeating verbal recommendations by Dr. Davis and the social worker that all contact between Caitlin and Joseph be terminated. Rhonda did not testify as to when these purported statements were made. Upon objection, the District Court ruled that the statements of Dr. Davis and the Idaho social worker were inadmissible hearsay.

Finally, Rhonda attempted, through the testimony of Pamela Hodges (Hodges), a community social worker for the State of Montana, to introduce a letter from Dr. Davis, dated April 30, 1993. Although the District Court refused to admit the letter itself on hearsay grounds, the content of the letter was read into the record by Hodges. It indicated that Dr. Davis had examined Caitlin on May 5, which post-dated the date of the letter, and that he recommended the termination of all contact between Joseph and Caitlin at the time of the exam. The content also indicated Dr. Davis' belief that Caitlin had been sexually abused by her father, although it does not set forth any medical findings of sexual abuse or the basis for his determination that Joseph was the perpetrator. No motion was made to strike that portion of Hodges' testimony and, therefore, the content of the letter remained of record.

The evidence advanced by Joseph as to Caitlin's reaction to him contradicts Rhonda's position. He testified that he spoke with Caitlin over the telephone five times between February 2 and 27. According to Joseph, Caitlin neither sounded upset nor cried during

6

these telephone conversations. Indeed, Joseph characterized the February telephone conversations as no different than the conversations with Caitlin which preceded the January visit.

Edith Wilson, Joseph's neighbor who babysat Caitlin during the January visit, testified to Joseph's warm rapport with Caitlin and Caitlin's lack of fear toward him during that time. She also indicated that Caitlin felt free to talk about Joseph, recounting a specific conversation in which she felt Caitlin would have expressed some indication of the sexual abuse if it had occurred.

The resolution of the conflicting evidence presented by Rhonda and Joseph necessarily entails an assessment of their credibility. It is clear that the District Court considered the parties' credibility in weighing the evidence and believed that Rhonda had fabricated an incident of child sexual abuse in order to deprive Joseph of his visitation rights. The credibility of the witnesses and the weight to be given their testimony in a contempt proceeding are matters for the district court's determination and are not reviewable by this Court. Marriage of Milanovich (1982), 201 Mont. 332, 335, 655 P.2d 963, 964. We conclude that sufficient evidence supports the District Court's belief that Rhonda fabricated the sexual abuse allegation.

The District Court's finding as to Rhonda's fabrication of the child abuse allegation undermines her reliance on Marriage of Jacobsen (1987), 228 Mont. 458, 743 P.2d 1025, for error in the court's contempt ruling. There, we determined that the district court properly denied the father's motion for contempt based on its

7

finding that the mother had refused visitation out of a concern for the health of the minor child. Jacobsen, 743 P.2d at 1028. The District Court's finding of fabrication in the case before us is the opposite of the operative finding in Jacobsen. Nothing in that case suggests that this Court properly may substitute its judgment for that of a district court in making a finding based to such a large extent on credibility and weighing of evidence.

The disobedience of a lawful court order constitutes contempt of the authority of the court. Section 3-1-501(1)(e), MCA. Thus, the District Court's belief that Rhonda fabricated the incident of sexual abuse to deprive Joseph of visitation rights pursuant to the dissolution decree, a lawful court order, is a sufficient basis for its contempt ruling. We hold that the District Court did not err in holding Rhonda in contempt.

Did the District Court abuse its discretion in refusing to admit out-of-court statements made by Dr. Davis and a social worker from the Idaho Department of Health and Welfare?

As set forth above, Rhonda attempted to testify as to verbal statements made by Dr. Davis and the Idaho social worker and to introduce a letter from Dr. Davis recommending the termination of all contact between Joseph and Caitlin. The District Court ruled that the evidence was inadmissible hearsay. Evidentiary rulings are within the sound discretion of the district court and are reviewed only for manifest abuse of that discretion. Mason v. Ditzel (1992), 255 Mont. 364, 370-71, 842 P.2d 707, 712.

Hearsay is a statement, not made by the declarant while

8

testifying at the trial, which is offered in evidence to prove the matter asserted. Rule 801(c), M.R.Evid. Rhonda agrees that the statements at issue here meet the first portion of the hearsay definition as statements by declarants not testifying. She contends, however, that the evidence was offered to prove its effect on her state of mind in refusing further telephonic contact between Joseph and Caitlin, rather than for the truth of the matters stated. On that basis, she asserts that the offered statements are not hearsay and are admissible under Moats Trucking Co. v. Gallatin Dairies (1988), 231 Mont. 474, 753 P.2d 883.

In Moats Trucking, we determined that a witness' testimony regarding a conversation between two other individuals was not hearsay under Rule 801(c), M.R.Evid., because it was offered to show the resulting effect of the out-of-court statements on the witness' state of mind and why a party acted as it did. Moats Trucking, 753 P.2d at 886. We relied on Brown v. Homestake Exploration Corp. (1934), 98 Mont. 305, 39 P.2d 168, where we addressed a similar situation involving testimony of an out-of-court conversation admitted to show that the statements were made and relied on by the testifying witness. Brown, 39 P.2d at 179. We quoted the following language from Brown:

> Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned.

Moats Trucking, 753 P.2d at 886 (emphasis added). Thus, if the witness' state of mind resulted from the out-of-court statement,

9

the statement is not hearsay and is admissible under Moats Trucking.

Here, Rhonda failed to establish that her state of mind in refusing telephonic contact resulted from the statements she offered into evidence. The first clear violation of the telephonic visitation occurred on March 7, 1993. Rhonda's offered evidence did not establish that the statements were made prior to this time. Rhonda's own testimony did not establish the dates of the verbal recommendations by Dr. Davis and the Idaho social worker. The offered letter from Dr. Davis, dated April 30, 1993, clearly followed the termination of the telephonic visitations. Nor does the letter provide evidence that Dr. Davis' verbal recommendation preceded the termination; it indicates that the recommendation was made during an examination of Caitlin on May 5, a date which post-dates the writing of the letter. Rhonda attempts to rely on another letter from Dr. Davis to establish the date of his verbal recommendation. That letter was never offered into evidence, however, and is not part of the record before us.

Absent evidence establishing that the statements were made prior to Rhonda's termination of Joseph's telephonic visitation rights, resulted in her state of mind and were relied on by her in terminating the telephone visits, the statements are not admissible as nonhearsay under Moats Trucking. We conclude that the District Court did not abuse its discretion in refusing to admit the out-of-court statements made by Dr. Davis and the Idaho social worker.

10

Did the District Court err in entering a conclusion of law regarding the absence of "serious endangerment" under § 40-4-217, MCA?

Rhonda contends that the District Court erred in entering a conclusion of law regarding the absence of "serious endangerment" under § 40-4-217, MCA, because the sole purpose of the hearing was whether she should be held in contempt of court. We agree that the conclusion exceeded the scope of the show cause hearing.

To constitute reversible error, however, the court's action must affect substantial rights of the complaining party. Davis v. Church of Jesus Christ of LDS (1990), 244 Mont. 61, 71, 796 P.2d 181, 186. Here, the District Court's erroneous entry of a conclusion under § 40-4-217, MCA, did not affect Rhonda's substantial rights in light of our affirmance of the court's sufficiently supported contempt ruling.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11