No. 93-534

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

LEO J. DUCHAM, VERNA M. DUCHAM and
LENORA E. HYLAND,

      Plaintiffs and Appellants,

-vs-

ROBERT L. TUMA and PHYLLIS A. TUMA,

      Defendants and Respondents.

FILED

JUL 6 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          Claude I. Burlingame, Attorney at Law,
          Thompson Falls, Montana

     For Respondents:

          David L. Astle, Attorney at Law,
          Kalispell, Montana

Submitted on Briefs:  March 17, 1994

Decided:  July 6, 1994

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

In this case, we review a judgment issued by the Twentieth Judicial District Court, Sanders County, denying Plaintiffs' request for a permanent injunction to stop Defendants' discharge of water across their property. We reverse.

In 1959 and 1961, Lenora Hyland (Hyland) purchased adjoining tracts of property located north and south of each other in the Trout Creek drainage in Sanders County. She used the land for agricultural purposes, raising cattle, sheep and hay. A swale, or shallow depression, crossed the two tracts from the northeast to the southwest.

In 1963, Hyland built a small stock pond straddling the swale on the northern tract. The pond originally was fed solely by spring run-off; Hyland diverted seepage from an irrigation ditch to fill the pond in 1968. She sold the two tracts in 1975 and purchased property directly to the west of the southern tract. The swale crosses the southeast corner of this property.

After intervening ownership of the northern and southern tracts by other individuals, those tracts were purchased by the parties to this action. Robert and Phyllis Tuma (the Tumas) purchased the northern tract containing the stock pond in 1986 and constructed a trout pond in the swale uphill from the stock pond. The next year, they reconfigured the diversion mechanism at the irrigation ditch, using a four-inch pipe to conduct water to the

2

trout pond. Leo and Verna Ducham (the Duchams) purchased the southern tract in 1988.

In August of 1989, the Duchams and Hyland (collectively referred to as Plaintiffs) filed a complaint asserting that the water diverted by the Tumas to supply the trout pond was being discharged across their property via the swale. They alleged that the Tumas' discharge of water constituted a continuing trespass and interfered with the Duchams' cultivation of crops on the southern tract.

Plaintiffs sought a temporary injunction during the pendency of the action and a permanent injunction to stop the discharge of water. Following a show cause hearing in August 1989, the District Court declined to issue a temporary injunction but admonished the Tumas to decrease the discharge of water to the minimum amount required to maintain the trout pond. In response, the Tumas reduced the opening of the four-inch diversion pipe to one-inch, presumably reducing the amount of water diverted into the trout pond and discharged down the swale.

Following a nonjury trial on June 3, 1993, the District Court declined to grant Plaintiffs a permanent injunction. The court found that water from the Tumas' trout pond flowed across Plaintiffs' property via the swale and that the Tumas had no express easement or condemned right-of-way for the discharge of water. The court concluded that Plaintiffs were not entitled to an injunction, however, because they had not proven that the Tumas 1) had breached a legal duty in regard to the discharge of water; 2)

3

were negligent in any manner; or 3) had engaged in any unlawful conduct. The grant or denial of an injunction is within the discretion of the district court and will not be reversed absent an abuse of that discretion. Gabriel v. Wood (1993), 261 Mont. 170, 174, 862 P.2d 42, 44.

Plaintiffs assert that the District Court side-stepped the dispositive issue before it—whether the Tumas had a legal right to discharge water down the swale that would defeat their trespass to real property claim. On that basis, they raise two arguments challenging the court's conclusions of law.

They first argue that the court erroneously entered conclusions of law on the irrelevant issues of the Tumas' breach of a legal duty and negligence. We agree. The Tumas' negligence in regard to the discharge of water was not explicitly or implicitly raised in the Pretrial Order or at trial and, thus, simply was not before the court. See Rule 16(e), M.R.Civ.P.; Zimmerman v. Robertson (1993), 259 Mont. 105, 111, 854 P.2d 338, 342; Nentwig v. United Industry (1992), 256 Mont. 134, 139, 845 P.2d 99, 102-03. The court's entry of extraneous conclusions of law, however, did not affect the substantial rights of the parties and is, therefore, harmless error. See Woolf v. Evans (Mont. 1993), 872 P.2d 777, 782, 51 St.Rep. 355, 358.

Plaintiffs' second argument concerns the court's conclusion that the Tumas' conduct was not unlawful as a trespass to real property. Given the court's failure to ascertain the Tumas' legal right to discharge the water, Plaintiffs argue that the conclusion

4

is erroneous as a matter of law. Our review of a district court's legal conclusion is plenary. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603-04.

We have adopted the elements of the tort of intentional trespass to real property set forth in the Restatement (Second) of Torts, § 158:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in possession of the other, or causes a thing or third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove.

Branstetter v. Beaumont Supper Club (1986), 224 Mont. 20, 24, 727 P.2d 933, 935 (emphasis added). In this context, the "intent" requirement is satisfied if the actor desires to cause the consequences of the act or believes that its consequences are substantially certain to result. Branstetter, 727 P.2d at 935.

The parties agreed in the Pretrial Order that water diverted by the Tumas into their trout pond flowed from the Tumas' property onto Plaintiffs' property. Thus, it is clear that the Tumas "caused a thing"--namely, water--to enter onto land owned by Plaintiffs, satisfying subsection (a) of Restatement (Second) of Torts, § 158. Furthermore, the District Court's finding No. 10 indicates that the discharge was intentional:

> That shortly after Defendants Tuma purchased the property they constructed a fish pond on their property by diverting water from the Green Mountain Ditch and running it through the fish pond, then onto the original pond created by Plaintiff Hyland, then on to the swale.

It is clear that the Tumas desired the overflow from the trout pond

5

to be dispersed via the swale and, as surely as water runs downhill, to cross Plaintiffs' property. Thus, all elements of an intentional trespass to real property are met in the case before us.

Conduct which otherwise would constitute an intentional trespass is not unlawful if it is privileged conduct pursuant to an easement. Restatement (Second) of Torts, § 188. In Montana, easements are created by grant, reservation, exception or covenant, implication or prescription. Kuhlman v. Rivera (1985), 216 Mont. 353, 359, 701 P.2d 982, 985. The Tumas agreed in the Pretrial Order that an easement had not been created by express grant; nor did they attempt at trial to establish any other type of easement right to discharge water across Plaintiffs' property.

As their sole defense, the Tumas argued that Plaintiffs were equitably estopped from asserting the trespass to real property claim. In support of this defense, the Tumas offered evidence of Hyland's construction of the stock pond in 1963 and their reliance on the continuing ability to divert water into the stock pond and discharge it via the swale when purchasing the northern tract.

The District Court made findings relating to the Tumas' equitable estoppel defense, determining that Hyland originally diverted water from the irrigation ditch to create the stock pond and that the Tumas relied on the continuing existence of the stock pond when purchasing the northern tract. The court did not enter any conclusions of law on the issue.

Equitable estoppel is not favored and will be sustained only

6

upon clear and convincing evidence. Dagel v. City of Great Falls (1991), 250 Mont. 224, 235, 819 P.2d 186, 193. Six essential elements are necessary for equitable estoppel to apply:

> 1) There must be conduct, acts, language or silence by the estopped party amounting to a representation or concealment of facts;
>
> 2) these facts must be known to the estopped party at the time of the conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to the estopped party;
>
> 3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time they were acted upon;
>
> 4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be acted upon;
>
> 5) the conduct must be relied upon by the other party; and
>
> 6) the other party must in fact act upon it in such a manner as to change the other party's position for the worse.

Dagel, 819 P.2d at 192-93.

It is clear that Plaintiffs did not make a representation or concealment of fact which would satisfy the first element of equitable estoppel. The Tumas purchased the northern tract from persons not involved in this suit; they do not contend that either Plaintiff played a role in that transaction. Thus, Plaintiffs were not in a position to--nor did they--make a representation or concealment of fact when the Tumas purchased the property.

There also is no merit to the Tumas' contention that the "representation of fact" element is satisfied by Hyland's construction of the stock pond in 1963 and subsequent use of that

7

pond. These actions by Hyland are not representations of fact; they are existing facts which cannot be construed as representations by Hyland to the Tumas. Nor, we observe, does Hyland's construction and use of the stock pond necessarily relate in any way to the Tumas' later construction and filling of the trout pond at issue in this action. We conclude that Plaintiffs are not equitably estopped from asserting their trespass claim.

Thus, on the basis of our conclusions that Plaintiffs established a trespass to real property and that equitable estoppel is not applicable here, we also conclude that the District Court erred in concluding that the Tumas' conduct was not unlawful. As a final matter, we must determine whether Plaintiffs are entitled to a permanent injunction to stop the Tumas' discharge of water across their property.

An injunction is appropriate "when it appears that the commission or continuance of an act will produce 'irreparable injury' to the party seeking such relief." Curran v. Dep't of Highways (1993), 258 Mont. 105, 107, 852 P.2d 544, 545. The commission of a single act which is destructive to the affected property, either physically or in the character in which it has been held or enjoyed, can result in an irreparable injury. Madison Fork Ranch v. L & B Lodge Pole Timber (1980), 189 Mont. 292, 302, 615 P.2d 900, 906. A continuing invasion of property rights also constitutes an irreparable injury; absent injunctive relief, an injured party would be forced to bring a multiplicity of actions at law in order to be compensated for the ongoing injury. See Floyd

8

v. City of Butte (1966), 147 Mont. 305, 313, 412 P.2d 823, 827.

Leo Ducham testified that he could not cross the swale with farm equipment because of the Tumas' discharge of water across his property, specifically recounting incidents in which a small tractor and a fertilizer spreader became stuck in the swale. Because he could not directly cross the swale to reach his property on the other side, as historically had been done, Ducham indicated that he was forced to use a county road that skirted his property and crossed the swale via a culvert. The testimony supports Plaintiffs' position that the Tumas' discharge of water interfered with the agricultural use of the southern tract.

Ducham also testified that he was unable to hay the swale in 1989, 1990, 1991, and 1992 because of the discharge of water. In addition, Hyland's testimony indicated that water flowed in the swale across her property throughout each year following the Tumas' construction of the trout pond. Thus, the discharge of water constituted a continuing invasion of the Duchams' and Hyland's property rights. Absent equitable injunctive relief, the Duchams and Hyland would have no adequate remedy at law and would be forced to institute an action for damages against the Tumas on an annual basis. These are precisely the kinds of circumstances in which courts of equity should intervene.

We hold that the District Court abused its discretion in denying Plaintiffs' request for a permanent injunction. We remand for the entry of a permanent injunction in Plaintiffs' favor and for further proceedings on the issue of whether Plaintiffs have

9

sustained damages and, if so, the extent of those damages.

Reversed and remanded.

_____
                        Justice

We concur:

_____
            Chief Justice

_____

_____
              Justices

10

Justice Fred J. Weber dissents as follows:

I dissent from the majority opinion and its reversal of the judgment of the District Court denying a permanent injunction to stop a discharge of the defendants' water across plaintiffs' land.

In the Findings of Fact, Conclusions of Law and Judgment of the District Court dated July 22, 1993, the District Court included the following key findings of fact:

> 16. That the water discharging from Tumas' fish pond follows the natural draw and flows across the Duchams' property, Hyland's property and onto Wilson's property.
> 17. That water which flows onto land owned by Plaintiff Ducham was originally diverted by Plaintiff Hyland onto land which she herself owned.
> 18. That in times prior to Tumas discharging water from their fish pond, during the Spring of the year, the Ducham draw flowed water. This water flowed as a result of Spring snow melt and rain fall and water from the Green Mountain ditch. Typically the Ducham draw would dry up during the month of June, and by July the draw was passable with haying equipment. <u>Since the construction of Defendants' fish pond, the flow of water through the draw may have increased, but the Plaintiffs failed to establish the quantum of any increase. There is no evidence of any material decrease in the amount of Plaintiffs' property available for hay production in its traditional usage which has been caused by Defendants.</u>
> (Emphasis supplied.)

The foregoing are the findings which led the District Court to conclude that an injunction was not appropriate. The majority has not addressed this determination of fact by the District Court.

The above findings establish that the water flowed down this draw as a result of spring snow melt, rain fall, water from the Green Mountain ditch, and water originally diverted from the pond by plaintiff Hyland. While there is no argument that some water runs down the draw from the defendants' fish pond, the District Court pointed out that the plaintiffs had failed to establish the

quantum of any increase in the normal flow. In a similar manner, the plaintiffs failed to present evidence of any material decrease in the amount of their property available for hay production. I conclude there is substantial evidence to support the foregoing findings on the part of the District Court. I would therefore affirm the denial of the injunction.

_____
Justice

Chief Justice J. A. Turnage concurs in the foregoing dissent.

_____
Chief Justice

Justice William E. Hunt, Sr., concurs in the foregoing dissent.

_____
Justice

July 6, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Claude I. Burlingame
Attorney at Law
P.O. Box 9
Thompson Falls, MT  59873

David L. Astle, Esq.
Astle & Astle
705 Main St.
Kalispell, MT  59901


ED SMITH
CLERK OF THE

SUPREME COURT

STATE    OF

MONTANA

BY:_____
                    Deputy