No. 95-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ARTHUR A. GREGORY and
DOROTHY R. GREGORY,

      Plaintiffs and Respondents,

   v.

DON SELISKI,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Dale Cox, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Donald Seliski, Forsyth, Montana (pro se)

      For Respondent:

      George W. Huss, Brown & Huss, Miles City, Montana

Submitted on Briefs:  June 4, 1996

Decided:  September 26, 1996

FILED

SEP 26 1996

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

In February 1995, respondents Arthur and Dorothy Gregory (Gregorys) instituted proceedings in the Sixteenth Judicial District Court, Rosebud County, seeking an injunction and damages for trespass and intentional infliction of emotional distress. Appellant Don Seliski (Seliski), defendant below, denied the allegations and counterclaimed, alleging intentional infliction of emotional distress and seeking injunctive relief against Gregorys. A jury awarded Gregorys damages for trespass, damages for intentional infliction of emotional distress, and punitive damages. The District Court awarded a permanent injunction in favor of Gregorys against Seliski. Seliski appeals pro se.

We affirm.

## ISSUE

Seliski raises twenty-nine "issues" on appeal, grouped into three separate categories. Seliski's contentions cover nearly every aspect of this case, and clearly establish his dissatisfaction with the judgment rendered at the District Court level. However, most of Seliski's contentions have no legal or factual basis, are not framed with any degree of specificity, and

2

generally are not conducive to review by this Court. Therefore, we conclude that we can properly consider only one issue:

Was the jury verdict supported by substantial credible evidence?

## FACTS

This case reached the District Court as a result of a bitter dispute between Seliski and Gregorys, next-door neighbors in Forsyth, Montana. Gregorys, who purchased their property in 1964, became neighbors with Seliski in 1979 when he purchased an adjacent lot. Initially, the parties were friendly toward each other, but the relationship turned sour when Gregorys installed a chain link fence in 1988 which separated the properties. The fence enclosed on Gregorys' property a dirt roadway running parallel to the properties' common border. Seliski had previously used the roadway at certain times to access the back portion of his property.

The Northern Pacific Railroad initially owned the property purchased by Gregorys in 1964, and Northern Pacific employees used the roadway to access a pumping station located at the back of the property, near a levee overlooking the Yellowstone River. During Northern Pacific's ownership of the property, some citizens of Forsyth used the roadway as a fishing access. A Mrs. Hollowell succeeded in ownership of the property, and she in turn sold the property to Gregorys in 1964. During the period of her ownership, Mrs. Hollowell allowed the public to use the roadway to access the river.

3

Seliski's mother Helen initially owned the property purchased by Seliski in 1979. Helen sold the property to Howards, who in turn sold the property to Seliski. During the period of their ownership, Howards rarely used the roadway at issue in order to access their property. At all times prior to the erection of the fence, Seliski's use of the roadway over Gregorys' property was permissive; it was not until 1988 that Gregorys were aware that Seliski claimed a right to use the roadway.

The erection of the fence instigated a war of words and retaliatory actions between Seliski and Gregorys, a war which, according to the record, was waged primarily by Seliski: he frequently called Arthur Gregory a "son of a bitch" and a "bastard," implied that his dog was smarter than Arthur Gregory, and referred to both Gregorys as "dumb"; he, on one occasion, parked his car in the middle of the street, ran down the fence line, and yelled at Dorothy Gregory "stick it up your ass and fuck it"; he threatened the safety of the Gregorys' dog; and he frequently parked his vehicles in front of Gregorys' property for prolonged periods of time, blocking Gregorys' free use of their property and returning the vehicles in front of Gregorys' property shortly after being requested to move them by law enforcement officials. In 1988, both Gregorys were nearly 70 years old while Seliski was some 20 years younger.

The major battle in this war occurred in the early morning hours of April 14, 1992, when Seliski drove one of his vehicles upon Gregorys' property, cut down a section of the chain link

4

fence, rolled back the fencing, removed a fence post, and drove onto his own property. Seliski had neither requested nor received permission from Gregorys to enter their property and remove a portion of the fence, had not warned Gregorys of his intent to do so, and had not instituted any legal proceedings to gain access. Seliski claimed to have entered Gregorys' property under a right of prescriptive easement. This incident prompted Gregorys to file the lawsuit which we are reviewing here.

At the outset of the District Court case Seliski was represented by counsel, but continued his defense pro se after his lawyer was suspended from the practice of law by this Court. Seliski participated intermittently in the pretrial process; on occasion, he failed to meet deadlines or appear at conferences. Nevertheless, Seliski was able to prepare a comprehensive defense, indicating to the court and opposing counsel in a proposed pretrial order dated February 2, 1995, his intention to present 54 witnesses and 56 exhibits at trial. At the three day trial that began February 15, 1995, Seliski presented fifteen witnesses, testified on his own behalf, and cross-examined the Gregorys, plaintiffs' only witnesses other than Seliski himself.

After hearing the evidence presented, the jury returned a verdict which awarded Gregorys $280.00 damages for trespass, $5,000.00 damages for intentional infliction of emotional distress, and $20,000.00 punitive damages. The court conducted a hearing regarding the amount of punitive damages, and ordered that the

5

award be lowered to $15,000. The court also awarded a permanent injunction in favor of Gregorys against Seliski. Seliski appealed.

## STANDARD OF REVIEW

Recently, this Court explained the standard of review applicable to our determination of the sufficiency of evidence to support a jury verdict:

> We will affirm the jury's verdict if there is substantial credible evidence to support the verdict. This Court's role is not to agree or disagree with a jury's verdict. Once we conclude that substantial evidence supports the verdict, our inquiry is complete. Substantial evidence has been defined as evidence a reasonable mind might accept as true and can be based on weak and conflicting evidence. When we determine whether substantial evidence supports the jury's verdict, we review the evidence in a light most favorable to the party who prevailed at trial. If the evidence at trial conflicts, the jury's role is to determine the weight and credibility of the evidence.

Cechovic v. Hardin & Associates, Inc. (1995), 273 Mont. 104, 112, 902 P.2d 520, 525 (citations omitted).

## DISCUSSION

Was the jury verdict supported by substantial credible evidence?

In their complaint, Gregorys alleged trespass and intentional infliction of emotional distress. In his answer, Seliski alleged that he had a prescriptive easement over Gregorys' property, and alleged intentional infliction of emotional distress on the part of Gregorys.

This Court has adopted the elements of trespass to real property as provided in the Restatement (Second) of Torts, § 158:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any

6

legally protected interest of the other, if he intentionally (a) enters land in possession of the other, . . . .

Ducham v. Tuma (1994), 265 Mont. 436, 440, 877 P.2d 1002, 1005. We are aware that "[c]onduct which otherwise would constitute an intentional trespass is not unlawful if it is privileged conduct pursuant to an easement." Tuma, 877 P.2d at 1005. We recently discussed the elements of a prescriptive easement:

> To establish either a public or private easement by prescription, the party claiming the easement must show 'open, notorious, exclusive, adverse, continuous, and uninterrupted use of the easement claimed for the full statutory period. The statutory period is five years.'

> . . . .

> In order for a claim to be adverse, 'the use of the alleged easement must be exercised under a claim of right and not as a mere privilege or license revocable at the pleasure of the owner of the land; such claim must be known to, and acquiesced in by, the owner of the land.'

Swandal Ranch Co. v. Hunt (1996), 915 P.2d 840, 843, 53 St.Rep. 361, 362 (citations omitted).

It is undisputed that Seliski intentionally entered Gregorys' property on April 14, 1992. To support his prescriptive easement claim, Seliski presented testimony that he, his family, and others in the community of Forsyth had at various times over the course of some 75 years used the dirt roadway on Gregorys' property.

However, there was ample evidence that such use was permissive. In addition, evidence was presented which showed that Gregorys at all times maintained their right of ownership of the roadway: they refused to dedicate the roadway to the city of

7

Forsyth for the installation of a pipeline; they denied Howards the use of the roadway in conjunction with a proposed trailer park at the rear of Howards' property; and they denied the public access to the river. With respect to Seliski, Gregorys testified that they permitted him to use the roadway to access the rear of his property because of their desire to be "neighborly." Moreover, Gregorys testified that they were first aware of Seliski's claim of right to use the roadway in 1988, after they had erected the fence. Gregorys also testified that any use of the roadway by anyone prior to April 14, 1992, was permissive.

There was clearly an abundance of evidence presented at trial on the basis of which a jury could conclude that Seliski did not establish an easement by prescription over the roadway on Gregorys' property. We hold that there was substantial credible evidence to support the jury's verdict that Seliski trespassed on Gregorys' property.

The jury also determined that Seliski was culpable for intentionally inflicting emotional distress, and awarded Gregorys punitive damages. This tort is recognized as an independent cause of action in Montana. Sacco v. High Country Independent Press, Inc. (1995), 271 Mont. 209, 896 P.2d 411. In Sacco we adopted a new test for negligent infliction of emotional distress, and in doing so altered the traditional elements of intentional infliction of emotional distress. Sacco, 896 P.2d at 426-28. In that case we stated that

> an independent cause of action for intentional infliction
> of emotional distress will arise under circumstances

8

where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission.

Sacco, 896 P.2d at 428.

The record is replete with examples of Seliski's actions, many of which have been recounted in the facts section of this opinion: screamed profanities; threats; cars parked solely to harass; and, of course, destruction of property. In addition, Gregorys testified that they were afraid of Seliski and that his conduct had caused each of them to experience nightmares. The evidence in the record establishes that Seliski engaged in a pattern of harassment of an elderly couple with little regard for the consequences of his conduct or, once the consequences were known, remorse. It was reasonably foreseeable that Gregorys would become emotionally distressed as a consequence of Seliski's intentional acts.

In Sacco we also stated:

We conclude that an award of punitive damages is the proper method of addressing the culpability and intentional nature of the defendant's conduct in an intentional infliction of emotional distress case.

Sacco, 896 P.2d at 428. We hold that the jury verdict that Seliski intentionally inflicted emotional distress and that Gregorys be awarded punitive damages was supported by substantial credible evidence.

We conclude with the reminder that while we consider and make allowances for pro se litigants, we cannot allow these parties to ignore court rules and procedures. Prompted by the particular circumstances here, we urge pro se litigants and attorneys alike to

9

take care to articulate their issues on appeal, and ground their issues in law and fact; otherwise, review by this Court will not be forthcoming.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

September 26, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Donald Seliski
Box 1491
Forsyth MT  59327-1491


George W. Huss
Brown and Huss, P.C.
507 Pleasant St., Box 128
Miles City MT  59301-0128


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy