JUSTICE RICE
dissenting.
¶28 I respectfully dissent.
¶29 The District Court entered summary judgment in favor of the Bank on two grounds. First, the District Court held that Potts had offered no objective evidence showing that the settlement agreement was conditioned uponhis obtaining financing from Washington County Bank. Second, the District Court held that, even if the agreement was conditioned upon the financing, Potts was equitably estopped from asserting that contingency. I would affirm the District Court’s entry of summary judgment on the second ground, on facts which are herein undisputed.
¶30 In addition to referencing Potts’ intention to secure financing, the January 28, 2000 letter memorializing the settlement agreement included two other provisions which had been discussed during the course of the parties’ negotiations. First, the letter indicated that Potts would only be responsible for the Bank’s attorneys fees incurred since January 3, 2000. As the District Court noted, “[a]t this point, Stockman Bank had incurred an additional $12,857.00 in legal fees and costs that it was legally entitled to under its loan agreements with Potts,” but that “Stockman Bank was willing to forego those fees and costs to settle this matter.” Second, the letter stated that because the payoff amount agreed to by the parties was less than Potts’ contractual liability to the Bank, “[t]his arrangement is available -with the understanding that upon the pay-off, Rick Potts and Stockman Bank will execute mutual releases of all claims ...”
*19 ¶31 Thereafter, the Bank received written and verbal communication from Washington County Bank that work on Potts’ financing application was in progress. However, following that communication, as early as March 10, 2000, Potts was advised that the Bank’s withholding of certain livestock production proceeds related to Potts’ loan, attributable to Potts for tax purposes, had created a tax liability which, according to James Patten’s affidavit, “appeared to preclude financing from the Washington County Bank” for the settlement agreement. However, Stockman Bank was not advised that Potts’ intended financing of the settlement agreement had been jeopardized by this development.
¶32 On March 22, 2000, Patten’s law partner, Scott Green, and Potts contacted the Bank and requested, according to Green’s affidavit, “a complete payoff of all liabilities owing to Stockman Bank, including any attorney fees or other costs. I specifically stated to Stockman Bank that it needed to include all attorney fees ...” (Emphasis added.) However, in this first communication between the parties since entering the settlement agreement, neither Potts nor his counsel informed the Bank about the income tax liability, the new claim against the Bank arising therefrom, the problem with financing the agreement through Washington County Bank, or that Potts no longer wished to act in accordance with the settlement agreement.
¶33 In response to Green’s request of March 22, Stanley Markuson of the Bank faxed a handwritten “loan payoff” document back to Green on the same day. That document did not set forth the original complete liability and attorney fees owed to the Bank by Potts, but rather, a calculation of the complete obligation owed under the parties’ settlement agreement. The document noted that attorney fees included were those incurred “since 1/3/00,” and noted a “total payoff’ of $318,694.42, which did not include the $12,857 in legal fees and costs which the Bank had agreed to forgo as part of the settlement agreement. Potts then paid the $318,694.42. As the District Court noted, although Markuson’s document had clearly reflected the amount due under the settlement agreement, neither Green, Patten nor Potts informed the Bank that “Potts no longer wished to act in accordance with the settlement agreement, but rather wished to pay the additional attorney fees and costs in order to preserve his counterclaim. Instead, without informing the Bank that Potts had not received financing from WCB, Mr. Green caused funds to be transferred to Stockman Bank in the settlement amount.”
¶34 The next day, March 23, Green contacted Markuson and requested release of the liens held by the Bank. Markuson complied *20 with this request, and also sent the original note underlying Potts’ obligations to the Bank to Green, stamped “paid.” On the next day, March 24, Patten informed the Bank that Potts refused to execute releases or dismiss the pending litigation.
¶35 Courts invoke the doctrine of equitable estoppel to promote justice, honesty and fair dealing. Billings Post #1634, VFW v. Dept. of Revenue (1997), 284 Mont. 84, 90, 943 P.2d 517, 520. Equitable estoppel is based upon the principle that “a party cannot, through his intentional ‘conduct, actions, language, or silence,’ induce another party to unknowingly and detrimentally alter his position and then subsequently deny the just and legal consequences of his intentional acts .’’Kelly v. Wallace, 1998 MT 307, ¶ 43, 292 Mont. 129, ¶ 43, 972 P.2d 1117, ¶ 43. While the doctrine is not favored, and must be supported by clear and convincing evidence, Ducham v. Tuma (1994), 265 Mont. 436, 441, 877 P.2d 1002,1006, the doctrine is supported by such evidence here, and its application is necessary to protect honesty and fair dealing herein. The elements of the doctrine are as follows:
(1) there must be conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it in such a manner as to change his position for the worse.
Kelly, ¶ 40, citing Dagel v. City of Great Falls (1991), 250 Mont. 224, 235, 819 P.2d 186, 193. See also Ducham, 265 Mont, at 441-42, 877 P.2d at 1006.
¶36 The District Court analyzed the elements of the doctrine, and found that they had been satisfied by the facts of this case:
First, Potts acted in conformity with the terms of the settlement agreement up to the point of refusing to execute the agreed upon release, such action amounting to a representation that there was indeed a valid agreement. Second, Potts knew at least as early as March 10, 2000, of the difficulty in obtaining financing from WCB. Third, Potts did not reveal this difficulty to *21 the Bank or to anyone representing the Bank, nor did he reveal that he no longer had the intention to act in accordance with the terms of the agreement. Rather (fourth), Potts’ continued conduct in conformity with the settlement agreement created circumstances, both natural and probable, that the Bank would also continue to act in conformity with the agreement. Fifth and sixth, the Bank indeed relied upon the conduct of Potts and changed its position for the worse by releasing all claims and liens it held against Potts according to the terms of the agreement.
¶37 I agree with the District Court. Potts knowingly induced the Bank to act in accordance with the settlement agreement to its own detriment. The Bank released its liens and forgave its attorneys fees and costs, relying on Potts’ promise in the settlement agreement to provide a full and complete release of Potts’ claims against it. The settlement agreement’s reduced payoff amount was specifically premised upon that promise. (“This arrangement is available with the understanding that upon the pay-off, Rick Potts and Stockman Bank will execute mutual releases of all claims ....”) Although Potts had requested the Bank’s calculation of the “complete” amount owed on March 22,2000, he intentionally failed to advise the Bank that he was requesting the amount owed under the original loan obligation, not the amount due under the parties’ negotiated settlement agreement. The Bank responded predictably by providing the reduced amount due under the settlement agreement, believing it would receive a release of all claims and an end to the litigation. By failing to disclose important facts and thus leading the Bank to believe that the settlement was proceeding as agreed, Potts obtained the Bank’s concessions provided under the settlement agreement, but failed to deliver what he had promised in order to obtain those concessions, and which the Bank believed it was receiving: a release of all of Potts’ claims against it.
¶38 Potts should not now be able to assert that his inability to obtain the contemplated financing negated a settlement agreement from which he has benefitted, and by which he has caused detriment to the Bank. I agree with the District Court that equitable estoppel should apply, and would affirm summary judgment on Potts’ counterclaim.
JUSTICE LEAPHART dissenting.
I concur in the foregoing dissent of JUSTICE RICE.